[Civ. No. 32382.   Second Dist., Div. One.   Mar. 21, 1969.]

THE PEOPLE ex rel. DEPARTMENT OF PUBLIC
WORKS, Plaintiff and Appellant, v. PRINCESS PARK
ESTATES, INC., Defendant and Appellant.

Hansen & Dolle, Hodge L. Dolle, Hodge L. Dolle, Jr., and Warren K. Peterson for Defendant and Appellant.

Harry S. Fenton, R. B. Pegram, Richard L. Franck, William H. Peterson, Richard J. Lopez and Robert W. Vidor for Plaintiff and Appellant.

FOURT, Acting P. J.—The parties in this eminent domain action have filed separate appeals from a judgment rendered pursuant to jury verdict awarding Princess Park Estates, Inc., (hereinafter sometimes referred to as either Princess Park or the defendant) the net sum of $407,581.25 for the taking by the State of California (hereinafter sometimes referred to as the State) of 57.73 acres of real property for freeway construction purposes. The State appeals from the judgment on the issue of valuation of the part taken only and Princess Park appeals only as to the issue of severance damages. Pursuant to stipulation and order of the appellate court the separate appeals have been consolidated.

The State contends that the jury was improperly instructed as to the method of determining from the evidence the valuation to be attributed to the parcel taken as a part of a larger tract owned by the defendant. Princess Park contends, as to the measure of severance damages, that the court improperly excluded certain evidence purportedly offered to show that the southeasterly triangle of property remaining after the freeway bisection of the original acreage would not be presently economically feasible to subdivide and develop. These contentions are without merit.

On or about August 14, 1964, Princess Park purchased for an overall price of $5,500 per acre a tract of 368.341 net acres of raw and undeveloped hillside land in the Newhall-Saugus

area. The subject acreage is situated some 30 miles northwest of the Los Angeles civic center with access and frontage on an existing three-lane highway commonly known as the Sierra Highway. On July 19, 1965, hereinafter referred to as the date of value or condition, the State commenced this action to acquire approximately 57 acres of defendant's property for the proposed construction of a portion of State Highway Route 14, commonly referred to as the Antelope Valley Freeway.

The topography of the acreage originally purchased and owned by defendant was irregular, ranging from level areas fronting on the Sierra Highway at the northwesterly boundary to precipitous areas of increasing steepness in proportion to their distance from the highway. The part taken was a swath running in a northeasterly direction, commencing from the rear or southernmost boundary of the larger parcel and ending at the easterly boundary line of said parcel, and its boundaries are irregular due to the nature of the terrain and the need for large cuts and fills in the proposed construction. The larger parcel also includes about 56 acres of an unstable, geologically ancient landslide with an estimated average depth of 35 feet, and of this area 12.1 acres were within the parcel taken for the freeway, while 7.2 acres were in the northwesterly parcel and 38.6 acres were situated in the severed triangle remaining southeasterly of the freeway. Almost 25 percent of the part taken was within the slide area.

Prior to the date of value or condition, tentative subdivision Tract No. 30008, containing six proposed units, had been filed with the Los Angeles County Planning Commission covering the 368 acres. Only Unit 1 and Unit 2 had received final approval, pending final determination of the exact alignment of the proposed freeway right-of-way and the land in proposed Units 3, 4, 5 and 6 remained in an undeveloped condition. However, following purchase and prior to the date of value, defendant had expended well over $2 million in improving portions of the larger parcel, grading and installing storm drain, streets, water lines and sewer systems in the northwesterly portion of the tract so that Unit 1 residential development was approximately 90 percent complete and some work had been done on Unit 2.

The State contends on appeal that the court erred in giving certain instructions requested by defendant, and in failing to give an instruction submitted by the State in lieu of those

complained of. ██ The State claims initially that the court erred in giving Instruction No. 9 which states: " 'When the condemnor does not take the whole, but takes only a part of the tract of land owned by the landowner, then you must determine the market value of the part taken according to the following method :

"You must determine whether it has a greater value considered as a separate and distinct piece of property disconnected from the remainder of the tract, or whether the part taken has a greater value considered as a fraction or part of the entire tract. You must then select from these two valuation methods whichever one of the two produces the higher and greater market value, and make your awards accordingly. The landowner is entitled to the highest value.' "

There is no suggestion that this instruction fails to embody a correct statement of the law, and indeed it was taken almost verbatim from instructions approved in an earlier case. (*People* ex rel. *Dept. Public Works* v. *Silveira,* 236 Cal.App.2d 604, 616, fn. 15 [46 Cal.Rptr. 260].) "By directing the jury to select from the two valuation methods therein referred to the one producing the higher value, the instruction represents a correct statement of the measure of damages in terms of market value, 'that is to say, the *highest price* estimated in terms of money which the land would bring if exposed for sale in the open market, with reasonable time allowed in which to find a purchaser, buying with knowledge of all of the uses and purposes to which it was adapted and for which it was capable.' [Citations.] " ( *People* ex rel. *Dept. Public Works* v. *Silveira, supra,* p. 620.) The State, however, contends that there was evidence in the *Silveira* case that valuation witnesses for the condemnees valued the part taken as a separate and distinct parcel of property, and that the instruction has no application in the present case and is improper where the alternatives in which the jury is instructed are not each supported by the evidence, since the instruction may then tend to mislead or confuse the jury. The defendant's appraisal witnesses in the present case clearly valued the parcel taken only as a part of the whole. The State's appraisal witnesses, on the contrary, divided the whole parcel into zones to which differing values were applied according to topography and then determined the zone or zones within which the parcel taken was situated in order to compute the value of the condemned acreage. The Princess Park witnesses valued the property taken

at $9,000 per acre or more, while calculations of the State's witnesses resulted in a value of about $3,000 per acre for the same parcel. The jury awarded Princess Park $358,581.25 or approximately $6,500 per acre. While it cannot be told from the verdict precisely how the jury calculated the value of the property taken, it is apparent from the testimony adduced at the trial and it is unanimously conceded by the parties and their witnesses that the value of the parcel taken considered as an isolated fraction was not higher, but was in fact substantially less than, its value as a portion of the whole. Therefore, since the jury is required by Instruction No. 9 to consider only that alternative which would give the landowner the highest value, any evidence of the value of the parcel taken as a separate and distinct piece of property is removed from the jury's consideration. It cannot be said that the instruction misled or confused the jury which was left only the single alternative of valuing the property as a part of the whole.

The State further contends that the court in giving Instruction No. 13[1] immediately following Instruction No. 9 incorrectly directed the jury not that they might apply alternative valuation methods, but that they must use the second method stated in Instruction No. 9, that of valuing the parcel taken as part of the whole, and claims that these two instructions are flatly contradictory. Whatever superficial disagreement may appear between these instructions, it is clear that under the evidence adduced in the present case only the second alternative allowed by Instruction No. 9 was applicable. It cannot, therefore, be said that Instruction No. 13 was ". . . conflicting and prejudicial, because it cannot be ascertained upon what theory the verdict was returned." (*Starr* v. *Los Angeles Ry. Corp.*, 187 Cal. 270, 280 [201 P. 599] ; *Noce* v. *United Railroads*, 53 Cal.App. 512, 518-519 [200 P. 819].)

---

[1] "Instruction No. 13.

"You are to value Parcel 1 being acquired as a part of the entire larger parcel of approximately 368 *plus* acres. That is, you need not consider Parcel 1 as an independent property to be sold on the open market, but it should be valued as it stood on July 19, 1965, in relation to the larger parcel.

"It may be that the parcel being acquired has the same average value per acre as the balance of the higher parcel, or it may have a lesser value. The worth of the portion taken as compared to the rest of the property, should be considered, and allowance made for the difference, if any, in values. This is a matter of opinion and judgment, as expressed by the experts whose testimony you have heard. It is for you to determine the weight to be given to these opinions."

Nor is the State entitled to a new trial *(Brignoli* v. *Seaboard Transportation Co.,* 29 Cal.2d 782 [178 P.2d 445] ; *McDonald* v. *City of Oakland,* 255 Cal.App.2d 816 [63 Cal.Rptr. 593]) because this was not a situation in which the alleged conflict, even if apparent to the members of the jury, could have resulted in or adversely affected the jury verdict. Instruction No. 13, under the circumstances of this case, merely elaborated the method by which the parcel taken could properly be evaluated as a portion of a larger whole, directing the jury that "The worth of the portion taken as compared to the rest of the property, should be considered, and allowance made for the difference, if any, in values."

Finally, the State contends that Instruction K-7[2] offered by the State and refused by the court, should have been given in lieu of both Instructions No. 9 and 13. Although this instruction clearly emphasizes the State's theory of relative worth, and uses that term, it otherwise appears merely to rephrase and to reiterate, in language deemed more desirable by the State, the substantially correct and adequate statement of the law encompassed by Instruction No. 13. Instructions No. 9 and 13, taken together, did not, as contended by the State, remove from the jury's consideration the theory of relative worth. As the State correctly points out, the jury is not compelled to find an average value for the entire parcel owned by the landowner unless it is convinced that ". . . each square foot [or acre] of defendants' land has the same value and that, if the parcel condemned is different in quality from the rest of the land, it should be assigned a different value." *(Los Angeles County Flood etc. Dist.* v. *McNulty,* 59 Cal.2d 333, 336 [29 Cal.Rptr. 13, 379 P.2d 493].) Under Instruction No. 13 the jury need not apply an average unit value, but may do so only if it is convinced that the portion to be valued in fact contributes an average value to the whole. A finding in the present case that the part taken

---

[2]"Instruction Refused.
"Plaintiff's Proposed Instruction K-7.

"Where a part, only, of a larger parcel of property is being acquired, the part being acquired is normally valued as a part of the whole. Value as a part of the whole is not, however, necessarily based upon an average value of the whole. Thus, the part taken may have a higher value because of certain advantages over other parts of the property, and, on the other hand, the part taken may have a lower value because of relatively poor quality. The relative worth of the lands taken, as compared to other parts of the property, should be considered. Therefore, in arriving at the value of the property taken, proper allowance should be made for difference in value, if any."

contributed a less-than-average value to the whole, because of qualitative differences, would be justified and would not violate the principle that the condemnee must be paid the highest value. Nor can we say, from the jury's verdict, that they did not, indeed, apply the theory of relative value so urgently asserted by the State. ■ In fact, there is no showing that the instructions given were prejudicial, and neither party is entitled as a matter of right to the giving of his version or statement of the law as an instruction to the jury.

■ Princess Park, on the other hand, contends that the trial court improperly excluded evidence pertaining to severance damages, claiming (1) that the testimony of Princess Park's appraiser concerning the increased costs to develop the remainder properties after the taking and the freeway construction was incorrectly stricken on objection by the State; (2) that the economic feasibility study prepared by defendant's engineer and offered to illustrate the comparative differences in the ''before'' and ''after'' development costs applicable to the triangular southeasterly remainder parcel was improperly excluded; and (3) that the court should not have rejected defendant's offer of proof of the increased costs of development of the remainder properties after the taking and construction of the freeway.

On the date of value a subdivision tract map had been filed with the county and two units had been approved and were partly completed. Approval had been withheld as to the other three proposed units pending determination of the freeway position, and although the State did not take possession the defendant was enjoined from using the proposed construction area. Appraisal witnesses for the State testified that there should be no severance damages and one of the State's witnesses estimated the value of the southeasterly remainder as $3,000 per acre both before and after the taking. Defendant's appraisal witnesses, on the other hand, estimated total severance damages of from $650,000 to $700,000 and calculated a decrease in value of the acreage composing the southeasterly remainder of approximately $6,000 per acre. The jury awarded a total of $87,000 in severance damages.

Freeway construction across the Princess Park property will involve filling in the low and cutting in the high places on the property, respectively, so that the only opening in the freeway as it traverses the property will ultimately be at the southwest corner where a full interchange with a bridge will

be constructed. A paved roadway will be constructed under the bridge by the State and this roadway, which will be paved and completed for a distance of approximately 800 feet, is designed to connect eventually with a proposed county road. However, the county as of the date of trial had not committed to the date of construction of such a road. Princess Park would, therefore, be required to build such a road at its own cost to achieve access to the southeasterly parcel. The parcel thus severed will, by construction of the freeway, be isolated from the rest of the tract and from the access originally offered by the Sierra Highway.

Shurtleff, an engineer who testified for Princess Park, had prepared an economic feasibility study showing the proposed development of the entire larger parcel disregarding any contemplated freeway acquisition. The State objected to admission of the map on the basis that it constituted an attempt either to value the property as though it had been subdivided into lots or to show the frustration of a particular plan of development and that it was, in either event, irrelevant to the issues. The trial court excluded the evidence on the basis that it was subject to objection as a "financial feasibility study rather than an engineering feasibility study," that there was no evidence or testimony that any appraiser for Princess Park relied on the map, and that there was no showing that it was the custom among informed potential buyers of subdivision property to have prepared or to use such information or such a map prior to the acquisition of specific acreage.

The economic feasibility studies by Shurtleff, as elaborated in the offer of proof made by Princess Park, were actually costs of land development based on specific plans and were properly excluded from its case in chief and from rebuttal as well. The offer of this evidence constituted an attempt by defendant to obtain a measure of damages based on frustration of a specific plan of development as illustrated by specific costs referred to in the offer of proof, which were substantially above the total severance damages estimated by either of Princess Park's appraisers. Since ". . . the sketch of a specific plan or development could have no other purpose than to attempt to enhance damages, . . . its rejection was proper." (*People* v. *Chevalier*, 52 Cal.2d 299, 309 [340 P.2d 598]. See also *People* ex rel. *Dept. Public Works* v. *Silveira, supra,* 236 Cal.App.2d 604; *People* v. *LaMacchia,* 41 Cal.2d 738, 751 [264 P.2d 15]; *People* ex rel. *Dept. of Public Works* v. *Alex-*

*ander,* 212 Cal.App.2d 84, 93-94 [27 Cal.Rptr. 720]; *Laguna Salada etc. Dist.* v. *Pacific Dev. Co.,* 119 Cal.App.2d 470, 476 [259 P.2d 498].)

· The State, moreover, conceded and its witnesses recongized that, except for the slide area, the highest and best use of the entire property was for ultimate subdivision development. In addition, all acknowledged, without reference to specific plans, that the southeasterly remainder below the proposed freeway construction area would be more expensive to develop and agreed that it could eventually be economically developed for subdivision, with the possible exception of the slide area. The cases referred to, by Princess Park deal with valuation of property. adaptable for subdivision rather than with severance damages and cannot be relied upon for the principal asserted. (*Napa Union High School Dist.* v. *Lewis,* 158 Cal.App.2d 69 [322 P.2d 39]; *Buena Park School Dist.* v. *Metrim Corp.,* 176 Cal.App.2d 255 [1 Cal.Rptr. 250]; *People* ex rel. *Dept. Public Works* v. *Flintkote Co.,* 264 Cal.App.2d 97 [70 Cal.Rptr. 27].) Defendant's offer of proof was an attempt to emphasize its case in chief by eliciting specific studies and costs, and such testimony was properly excluded since it would have been merely cumulative in effect. (Cf. *People* ex rel. *Dept. Public Works* v. *Donovan,* 57 Cal.2d 346, 357 [19 Cal.Rptr. 473, 369 P.2d 1].) The trial court may, in the sound exercise of its discretion, exclude evidence if its probative value is substantially outweighed by the probability that its admission will necessitate undue consumption of time, create substantial danger of undue prejudice, confuse the issues or mislead the jury. (Evid. Code, § 352; *Adkins* v. *Brett,* 184 Cal. 252, 258 [193 P. 251].) In view of the complete, specific and detailed plan of subdivision illustrated by the theoretical tract map submitted by Princess Park, the trial court properly concluded that a cautionary instruction limiting its applicability would have been of no avail and in its discretion excluded the map and the proposed foundation testimony and rejected Princess Park's offer of proof in relation to this evidence.

The judgment is affirmed.

Lillie, J., and Thompson, J., concurred.

A petition for a rehearing was denied April 21, 1969.