[No. F006689. Fifth Dist. Nov. 2, 1987.]

CITY OF PORTERVILLE, Plaintiff and Appellant, v.
MAX L. YOUNG, Defendant and Appellant.

 

**COUNSEL**

Fred V. Spallina for Plaintiff and Appellant.

Isham, Lynch, Cronin & Rodriguez and Richard B. Isham for Defendant and Appellant.

OPINION

IVEY, J.*—■ ■ ■ ■

Plaintiff, City of Porterville (city), and defendant, Max L. Young (owner), each appeal from a judgment in condemnation, after a court trial, finding the value of owner's property taken (the take) to be $18,336, and denying owner litigation expenses.[1] City contends: (1) the take should have been valued as agricultural property; (2) city could legally require dedication of the take if the parcel of which it was a part (the parcel) were to be developed to a commercial use; and (3) the testimony of owner's appraiser was totally without merit. Owner contends city's final offer was unreasonable and he is therefore entitled to an award of litigation expenses.

As will appear, we conclude city's first and second contentions are correct and reverse the judgment.

### THE FACTS AND PROCEDURAL BACKGROUND

In the late 1950's, owner acquired the parcel, five acres of agricultural property located on the east side of Prospect Street approximately three hundred twenty feet south of the intersection of that street and Henderson Avenue in the City of Porterville. Although the parcel was planted with a pomegranate orchard, it acquired C-2 zoning in 1965. Between 1983 and 1985, owner did not make any agricultural use of the parcel because it "was small, water hard to irrigate, hard to maintain due to the fact there's a lot of trespass, and it just was very poorly located at this time for agricultural use." The lands surrounding the parcel had been developed for retail sales, such as K-Mart, Longs Drugs, and 7-Eleven. In 1985, title to the parcel was held by the testamentary trust of owner's former wife, Martha Young. Owner was both the trustee and the beneficiary of the testamentary trust.

On April 3, 1984, the Porterville City Council (the council) adopted resolution No. 9923, a "Resolution of Necessity to condemn and acquire the westerly twelve feet of [the parcel], . . . . for the construction of a public roadway . . . ." The council authorized the city attorney to commence

---

* Assigned by the Chairperson of the Judicial Council.

[1] In eminent domain proceedings, the interlocutory judgment determines the rights of the parties and fixes the amount of compensation to be paid by the condemner. Although termed an "interlocutory judgment," it is final for purposes of appeal. (*Baldwin Park Redevelopment Agency* v. *Irving* (1984) 156 Cal.App.3d 428, 432 [202 Cal.Rptr. 792].) A judgment in condemnation is a final judgment within the meaning of Code of Civil Procedure section 904.1, subdivision (a). (See *People* v. *Superior Court (Bank of America N. T. & S. A.)* (1956) 145 Cal.App.2d 683, 687 [303 P.2d 628] [construing predecessor statute to Code Civ. Proc., § 904.1].)

eminent domain proceedings to acquire the take for "a fair and reasonable consideration." On June 22, 1984, city filed a complaint for condemnation of real property in Tulare County Superior Court. The city alleged appropriation of the take was necessary to widen Prospect Street "in the manner that will be most compatible with the greatest public good and the least private injury."

On May 24, 1985, owner filed a final demand[2] for compensation in the amount of $21,595. On July 8, 1985, city filed a final offer of compensation in the amount of $17,000. On July 12, 1985, city filed a revocation of the July 8 final offer of compensation and indicated it would resubmit another offer 30 days before the scheduled trial date. On July 29, 1985, city filed a final offer of compensation in the amount of $730. On August 23, 1985, city filed yet another final offer of compensation in the amount of $8,500.

The parcel was zoned PD-C2 at the time of the taking. That zoning allowed the same uses as C-2 (commercial) zoning but with the addition of planned unit development zoning. The latter zoning allows diversification in the location of structures or other side elements. The parcel fronted on a paved city-maintained road but had no curbs, gutters, or sidewalks. Sewer and water connections, necessary for commercial development, were located north of the intersection of Prospect Street and Grand Avenue, several hundred feet south of the southern boundary of the parcel.

Porterville City Planner Milford Dan Whatley testified owner would have to incur substantial expense to develop the parcel commercially, indicating it would cost $13,200 to extend sewer service to the parcel, $17,700 for water service, including three fire hydrants, and an additional $8,600 for installation of utilities, telephone lines, and cable television lines. In addition, owner or any developer would have to obtain a building permit, and dedicate the first 12 feet of frontage on the parcel to city.[3] Whatley said city would require dedication of the appropriate frontage to obtain the ultimate width of the street before issuing any building permit.[4]

Real estate appraiser John Niblett appraised the parcel for city. In November 1982 Niblett appraised the parcel at $2 per square foot as

---

[2] Code of Civil Procedure section 1250.410 sets forth the procedure for the exchange of offers and demands which "shall be the only offers and demands considered by the court in determining the entitlement, if any, to litigation expenses." (Code Civ. Proc., § 1250.410, subd. (a).)

[3] At the time of the taking, Prospect Street was 60 feet wide. Under the land use and circulation elements of city's general plan, adopted November 2, 1982, the ultimate width of Prospect Street was 84 feet, necessitating 12 feet of dedication on each side, for the additional 24 feet.

[4] Whatley testified at length concerning city code sections 2616 and 2616.1, which require developers to dedicate street frontage at the time of issuance of a building permit or conditional use permit.

commercial property because it had commercial zoning. In October 1983, he appraised the parcel at $2.50 per square foot on the same basis. On July 14, 1985, Niblett reappraised the parcel in light of *City of Fresno* v. *Cloud* (1972) 26 Cal.App.3d 113 [102 Cal.Rptr. 874]. Pursuant to *Cloud,* Niblett assumed the highest and best use of the property was agricultural rather than commercial, and concluded the parcel was worth $6,000 per acre and the take (a 12-foot-wide, 436.63-foot-long strip) would be worth $721.80 (.1203 acres x $6,000 per acre).

Real estate appraiser Jack E. Letsinger appraised the parcel for owner. Letsinger concluded the 12-foot-wide frontage strip was worth $27,508 on the date of the take (5,239.56 square feet x $5.25 per square foot). Letsinger did not consider the expense of relocating sewer, water or utility lines to develop the parcel as a commercial site. Letsinger arrived at his per-square-foot calculation by treating the take of 5,200 square feet as a small commercial lot regardless of its configuration. Based on sales of smaller lots in other areas, Letsinger arrived at the value of the take. To arrive at the figure of $5.25 per square foot, Letsinger added the per-square-foot values from 10 comparable parcels of real property and then divided the total by 10. In addition, he analyzed each comparable sale to determine how it compared with the parcel. Letsinger testified, "In this case they all seemed to have about the same use [and] utility. So it [averaging of the 10 comparables] was a good gauge and a good way to merit the value of [the] subject take." According to Letsinger, the highest and best use of the subject property was development of modern commercial improvements.

On December 23, 1985, the trial court filed a judgment in condemnation, stating: "The court issued its Memorandum of Decision on November 21, 1985, and found that the highest and best use for the subject property is commercial, with a value of $3.50 per square foot. The court further found that 5,239 square feet were properly condemned by the plaintiff, and the total value of the take was $18,336.00, as of June 22, 1984." The judgment provided that owner recover no litigation expenses.

On December 30, 1985, the trial court conducted a hearing on owner's motion for payment of litigation expenses, including $774.50 in appraiser fees and $8,060 in attorney fees. Owner argued the city's reliance on *City of Fresno* v. *Cloud, supra,* 26 Cal.App.3d 113, was misplaced and not held in good faith and city's final offer of $8,500 was "unreasonable" under Code of Civil Procedure section 1250.410.

On January 8, 1986, the court denied owner's motion, holding: "[I]t was not unreasonable for the Plaintiff to take the position that the Cloud case could be successfully argued in support of the Plaintiff's position which

would then support Plaintiff's offer prior to trial as reasonable. The Court found that the Cloud case was not applicable to the present factual situation and rejected it in granting judgment for Defendant in the sum of $18,336.00."

On January 24, 1986, city filed a timely notice of appeal from the judgment, and, on February 13, 1986, owner filed a timely notice of cross-appeal from that portion of the judgment "which made no award of litigation expenses, including attorneys' and appraiser's fees."

DISCUSSION

THE TAKE SHOULD HAVE BEEN VALUED AS AGRICULTURAL PROPERTY AND CITY COULD REQUIRE ITS DEDICATION AS A CONDITION TO THE ISSUANCE OF A BUILDING PERMIT

Private property may be taken or damaged for public use only when just compensation, ascertained by a jury unless waived, has first been paid to, or into court for, the owner. (Cal. Const., art. I, § 19.) The measure of this compensation is the fair market value of the property taken. (Code Civ. Proc., § 1263.310.) The fair market value of the property taken is the highest price on the date of valuation that would be agreed to by a seller, being willing to sell but under no particular or urgent necessity for so doing, nor obliged to sell, and a buyer, being ready, willing, and able to buy but under no particular necessity for so doing, each dealing with the other with full knowledge of all the uses and purposes for which the property is reasonably adaptable and available. (Code Civ. Proc., § 1263.320, subd. (a).)

■ City contends the take should be valued at its highest and best use for agricultural rather than commercial purposes, relying on the decision of this court in *City of Fresno* v. *Cloud, supra,* 26 Cal.App.3d 113.

In *Cloud,* the plaintiff city (Fresno) condemned strips across two adjoining parcels in a residential-agricultural (R-A) zone for street-widening purposes. An R-A zone is an area in which only residential, agricultural and similar limited land uses are permitted until the need for more extensive land development warrants a zone change. A court-appointed private appraiser testified for the landowners and Fresno's assistant property management agent testified for the municipality. With respect to the first parcel, which was located on a corner, the private appraiser visualized three different zones of value—a service station site on the corner, a "wraparound" zone for professional offices, and a multiple residential unit area for the remaining acreage, and affixed the value of the "take" from the first parcel at $23,334. The appraiser then concluded the highest and best use for

the second parcel, which had frontage on only one street, was multiple residential and fixed the value of the frontage strip taken from this parcel at $5,306.50.

Fresno's agent agreed the highest and best use for the corner of the first parcel was a service station site with a "wraparound" zone for professional offices. The agent also agreed the highest and best use for the second parcel was multiple residential. However, he assumed the parcels could not be used for any of these purposes without a change in the existing zoning. He further assumed (1) before the city council would approve the change, it would require street dedications to conform the widths of adjacent roads to the city's master plan of streets and highways and (2) street dedications would be required before issuance of building permits for the construction of a gas station and professional office buildings. The agent concluded the frontage strips taken from the two parcels could never be used for any purpose other than residential-agricultural, that residential-agricultural land had a value of $5,300 an acre and the value of the takes should be calculated accordingly.

The trial court (1) accepted the private appraiser's opinion of the highest and best uses for the two parcels; (2) also accepted his opinion as to the value of the service station site, the "wraparound" zone, and the remaining acreage; and (3) awarded defendant landowners a total of $31,030.30 for the property taken from the first parcel and $5,307.50 for the strip taken from the second parcel.

During the *Cloud* trial, Fresno offered a resolution of the city council regarding Fresno's policy in relation to zoning changes for property fronting on streets shown on the master plan of streets and highways. Pursuant to this resolution, if a zoning change could increase vehicular traffic generated by the use of the property, the council could require street dedications necessary to conform the street to the master plan before approving the change. Fresno offered to prove "if an application for a zoning change for Parcels 1 and 2 had been made prior to the 'take,' there would have been a high probability that the change would not have been allowed and that building permits would not have been issued without the street dedications." (*City of Fresno* v. *Cloud, supra,* 26 Cal.App.3d at p. 119.) Defendants successfully objected, arguing the proffered evidence was irrelevant, raised collateral issues, and violated Evidence Code section 813.[5]

---

[5] Evidence Code section 813, subdivision (a) restricts the sources from which the value of property may be shown to the opinions of expert witnesses, the owner or spouse of the owner of the property, and an officer, regular employee or partner designated by a corporation, partnership or association that owns the property, if the designee is knowledgeable as to the value.

Fresno argued on appeal the trial court unduly curtailed its presentation of relevant evidence and this court agreed. The two parcels were located in a restricted land use zone and the appraisers assumed there was a reasonable probability more favorable zoning changes would be made in the near future. Fresno's agent ascertained there was a high probability that street dedications would be required before the zoning changes would be approved and considered the effect of this burden on the value of the property taken. On the other hand, the private appraiser completely overlooked the probable dedication requirement. The street dedication probability went to the very core of the appraisal by the agent and the court's refusal to hear Fresno's supporting evidence was an abuse of discretion.[6]

We reversed and held that if upon retrial on the issue of value, the trial court found that the property taken is "a part of the very frontage that the landowners would have had to dedicate to the city in order to secure the zoning changes needed to develop the remaining parcels to their highest and best uses, the court must not value the property taken on the basis of those highest and best uses; it must determine instead the value . . . on the basis of the highest and best uses permitted by the existing zoning, because [the] land [taken] could never be used for any other purpose." (*Id.* at p. 123.)

City argues that, since owner would have to dedicate the take for no compensation in order to develop the parcel to commercial use, *Cloud* controls and "the only fair result is to pay [owner] for its existing use, which also is its highest use-agricultural."

Owner contends the holding of *Cloud* is predicated on a landowner being required to dedicate a strip to the municipality to obtain commercial zoning for the remainder of the parcel; since the landowner would no longer own the strip following rezoning, he would never own the property with commercial zoning. Owner distinguishes *Cloud* from the instant case as follows: "In the present case, the zoning *in existence* before any dedication could be required, was commercial. It was, and still is, commercial. The reason this point was raised in *Cloud* at all was because the landowner was arguing that the existing zoning was not indicative of the highest and best use, which he stated was commercial. The condemnor was successful on appeal in arguing that the dedication requirement prevented any strip, which might ultimately be dedicated to obtain the hypothetical commercial zoning, from being valued any differently than its pre-rezoned status. Since the strip to be

---

[6] Although the trial judge declined to admit the city council's resolution and planning director's testimony into evidence, he found street dedications would be required before zoning changes would be made for the two parcels.

dedicated would be nonexistant [*sic*] following rezoning, it must be valued at its pre-rezoning condition, which in *Cloud* was agricultural.

"Consequently, respondent, in this case, is free to argue that *Cloud* requires, as a matter of law, the conclusion that the 12-foot strip in question be valued consistent with its pre-building permit status, namely, commercial. The CITY argues that highest and best use on the date of take must be assumed to be the historical highest and best use on a date 20 years earlier. *Cloud* does not stand for this proposition . . . ."

In spite of the apparent limitations on the way the value of property may be shown, nothing in the Evidence Code prohibits the admission of any admissible evidence to enable the court, jury, or referee to understand and weigh the testimony given under Evidence Code section 813, subdivision (a). In an eminent domain proceeding, this includes, but is not limited to, evidence as to the nature and condition of the property and the character of the improvement proposed to be constructed by the condemner. Such evidence, except evidence of the character of the improvement proposed to be constructed, is subject to impeachment and rebuttal. (Evid. Code, § 813, subd. (b).)

Whatley testified he was familiar with city's zoning regulations, ordinances, and resolutions pertaining to planning use. As city planner, he was charged with the regulation and enforcement of development projects within the city and, in his experience, city required street dedications at the time of issuance of building permits rather than at the time of zoning changes.[7]

Whatley conceded city had already permitted a zone change on the parcel which arguably would allow a use more intense than agricultural; however, he indicated the city codes requiring dedication would be applicable if city had not widened Prospect Street and owner sought to develop the parcel for commercial uses.

Letsinger acknowledged the relevant city ordinances but claimed a dedication of property was required only when an applicant initiated a request for a building permit, variance, special use permit, or zone change.

---

[7] City required the dedications at the building permit stage for two reasons. First, city had an unwritten policy it would not condition zoning changes. Second, there was no express statutory or case authority for conditional zoning prior to *Scrutton* v. *County of Sacramento* (1969) 275 Cal.App.2d 412 [79 Cal.Rptr. 872].

We conclude *Cloud* is controlling here in view of the applicable city ordinances which: (1) require an applicant for a conditional use permit or a building permit to dedicate frontage necessary to obtain the ultimate right-of-way width required by ordinance;[8] (2) prohibit any commercial use without a conditional use permit which is conditioned on improvements meeting city standards;[9] and (3) provide that dedication of land required to develop a street shall be made at the time of the issuance of a building permit, if there is no subdivision involved.[10]

Although the parcel was zoned for commercial purposes, it could not be adapted and developed for such purposes without a dedication of frontage to widen the east side of Prospect Street to its ultimate planned width of 42 feet—half of the total planned width of 84 feet. The take is the very frontage owner would have had to dedicate to city to secure the building permits or conditional use permit needed to develop the parcel to its highest and best commercial use. The trial court should have determined the value of the take on the basis of its agricultural use, because it could never be used for any other purpose. To paraphrase *Cloud:* if the take is so valued, and if the remainder of the parcel *is not* developed beyond its present agricultural use, owner will have been paid exactly what the take was worth; if the remainder of the parcel *is* developed for commercial purposes, owner will have been paid for the land he would have been required to dedicate to city to obtain the building permits or conditional use permit necessary for the commercial development.[11]

█ City's contention concerning the testimony of owner's appraiser is comprised of summary assertions without citations to the record or to applicable case authority and must be deemed without foundation. (See *People* v. *Dougherty* (1982) 138 Cal.App.3d 278, 282-283 [188 Cal.Rptr. 123].)

█ A review of the entire record reveals city acted in good faith in preparing a final offer of compensation in the proceeding and the trial court properly denied defendant landowner's motion for litigation expenses under Code of Civil Procedure section 1250.410.

---

[8] Porterville City Code section 2616.1.

[9] Porterville City Code section 2616.

[10] Porterville City Code section 2619C.

[11] Neither at trial nor here did owner propose a commercial use to which the parcel (and the take) could have been put without one or both such permits; at oral argument neither counsel could think of any such use.

The judgment is reversed and remanded with instructions to apply the applicable principles set forth in *Cloud* and to calculate the fair market value of the subject property for agricultural purposes. In all other respects the judgment is affirmed. Pursuant to the provisions of Code of Civil Procedure section 1268.720, owner is awarded his costs on appeal.

Hamlin, Acting P. J., and Best, J., concurred.