[No. A051358. First Dist., Div. One. June 25, 1992.]

CONTRA COSTA COUNTY FLOOD CONTROL AND WATER
CONSERVATION DISTRICT, Plaintiff and Appellant, v.
LONE TREE INVESTMENTS, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts II and III.

## COUNSEL

Victor J. Westman, County Counsel, Sharon L. Anderson, Deputy County Counsel, Meyers, Nave, Riback & Silver, Michael R. Nave, Andrea J. Saltzman and Wendy A. Roberts for Plaintiff and Appellant.

Neumiller & Beardslee, James A. Askew, Richard M. Archbold and Paul N. Balestracci for Defendant and Appellant.

## OPINION

**DOSSEE, J.**—In this eminent domain action, the public agency contends that the trial court erred when it refused to explicitly instruct the jury to value the condemned property as agricultural property. The jury assigned a value to the property consistent with its use as commercial property. We conclude that the condemned property should have been valued based on its use as agricultural property, and we reverse the judgment and remand for further proceedings consistent with this opinion.

### FACTUAL AND PROCEDURAL BACKGROUND

On July 24, 1989, the Contra Costa County Flood Control and Water Conservation District (District) filed a complaint in condemnation in order to acquire a 4.928-acre strip of land owned by Lone Tree Investments (Lone

Tree). The District intended to use the strip of land as part of a major flood control project in Eastern Contra Costa County. Attached to the complaint was a resolution of necessity (Code Civ. Proc., § 1245.220)[1] from the county board of supervisors authorizing the acquisition of the 4.928-acre parcel (the take).

The take was a portion of an undeveloped 38.42-acre parcel owned by Lone Tree and located in the City of Antioch. A "specific plan" adopted by the city in 1982 designated Lone Tree's property for commercial development, and the plan anticipated that a flood control channel would run through the property, though in a different location from the take. The plan limited commercial development to approximately 16 acres of the parcel with the remainder designated as open space, which included the flood control channel.

In order to complete its channel project, the District generally acquired land by requiring property owners to dedicate land as a condition of development, but because development of Lone Tree's property lagged behind that of surrounding properties, the District was forced to exercise its power of eminent domain in this instance.

The court conducted the trial in two phases. In the first phase, the court considered the question of whether the take would have to be dedicated to the City of Antioch as a condition of approval of development of Lone Tree's property. The District argued that any development of Lone Tree's property would be conditioned on dedication of the take, and thus, should be valued based on agricultural use, the use that could be made of the property without invoking the dedication requirement.

After hearing evidence on the issue, the court found there was a "reasonable probability" that the city could and would require dedication of the take as a condition of development, that the take was the particular piece of property which would have to be dedicated, and that regardless of the location of the flood channel, the take was the least amount of property which would be necessary for the project.

The second phase of the trial proceeded before a jury on the question of the valuation of the take. An appraiser testified for Lone Tree that the highest and best use for Lone Tree's property was commercial use, and therefore, the fair market value of the take was $643,991. The District's appraiser agreed that the highest and best use for Lone Tree's property was commercial use,

---

[1] All further statutory references are to the Code of Civil Procedure.

but, in accordance with the District's position, he opined that the take could not be used for commercial purposes, as it would have to be dedicated to the city before development was allowed. Therefore, in his opinion, the take should be valued as agricultural property, with a fair market value of $49,280.

The court refused the District's request to explicitly instruct the jury that the highest and best use of the take was for agriculture. The jury returned a verdict that the fair market value of the take was $643,991.[2]

Lone Tree moved to recover its litigation expenses, including attorney fees, pursuant to section 1250.410 on the ground that the District's final offer of $76,464 was unreasonable. The court denied Lone Tree's motion, finding that the District's final offer was made in good faith reliance on a series of cases that appeared to support the District's position.

The District appeals contending that the court improperly refused the requested instruction. Lone Tree also appeals contending that the court erred when it refused to award Lone Tree its litigation expenses.

DISCUSSION

I. *Jury Instruction*

■ Based on the trial court's findings in the first phase of the trial, the District requested the following jury instruction: "There is a reasonable probability that the subject property cannot be developed to its highest and best use without a dedication to the City of the parcel being condemned in this action. Therefore, the condemned parcel shall be valued on the basis of the use that can be made of the parcel without such dedication. That use is agricultural."

The court gave the instruction, but modified it by deleting the last sentence. The District asserts that the modified instruction is confusing and inconsistent with California case law.

In condemnation proceedings, the measure of compensation is the fair market value of the property taken. (§ 1263.310.) Typically, fair market

---

[2]The District also acquired certain permanent and temporary easements. Though the briefs on appeal fail to maintain the distinction between the easements and the take for purposes of argument, below the District's expert testified that the take and the temporary easements should be valued based on agricultural use, while the permanent easements should be valued based on commercial use of Lone Tree's parcel. The jury apparently assigned commercial values to both the temporary and the permanent easements.   .

value equals the highest price a seller would be willing to sell for and a buyer would be willing to pay (see § 1263.320), but it is often difficult to apply this equation where the take is only part of the owner's property and the take appears to have little value separate from the whole.

Throughout the proceedings, Lone Tree has urged that the proper method of valuing the take is to determine the fair market value of its entire parcel based on its potential for commercial development, calculate a price per square foot, and then value the take based on this price per square foot. However, this method of determining market value does not apply unless each square foot of the parcel condemned has the same value (*L. A. County Flood etc. Dist.* v. *McNulty* (1963) 59 Cal.2d 333 [29 Cal.Rptr. 13, 379 P.2d 493]), and where dedication of the take would be required as a condition of development, the take generally does not have the same value per square foot as the remainder of the parcel (see *City of Porterville* v. *Young* (1987) 195 Cal.App.3d 1260, 1269 [241 Cal.Rptr. 349]; *City of Fresno* v. *Cloud* (1972) 26 Cal.App.3d 113, 123 [102 Cal.Rptr. 874]; *People* ex rel. *Dept. Pub. Wks.* v. *Investors Diversified Services, Inc.* (1968) 262 Cal.App.2d 367, 372-374 [68 Cal.Rptr. 663]).

In *City of Porterville* v. *Young, supra,* 195 Cal.App.3d 1260, the city sought to condemn a 12-foot-wide strip of land in order to widen a public street. The take was part of an undeveloped five-acre parcel zoned for commercial use. The Porterville City Planner testified that before any building permits were issued for the parcel, the city would require dedication of 12 feet of frontage in order to obtain the ultimate width of the street. (*Id.,* at p. 1263.)

The trial court in *Young* found that the highest and best use for the condemned property was commercial and valued it accordingly. The Court of Appeal, applying the principles set forth in *City of Fresno* v. *Cloud, supra,* 26 Cal.App.3d 113, reversed the judgment and remanded the matter with instructions to calculate the fair market value of the condemned property based on its use for agricultural purposes. (*City of Porterville* v. *Young, supra,* 195 Cal.App.3d at p. 1270.)

"Although the parcel was zoned for commercial purposes, it could not be adapted and developed for such purposes without a dedication of frontage to widen the east side of Prospect Street to its ultimate planned width of 42 feet—half of the total planned width of 84 feet. The take is the very frontage owner would have had to dedicate to city to secure the building permits or conditional use permit needed to develop the parcel to its highest and best

commercial use. The trial court should have determined the value of the take on the basis of its agricultural use, because it could never be used for any other purpose. To paraphrase *Cloud*: if the take is so valued, and if the remainder of the parcel *is not* developed beyond its present agricultural use, owner will have been paid exactly what the take is worth; if the remainder of the parcel *is* developed for commercial purposes, owner will have been paid for the land he would have been required to dedicate to city to obtain the building permits or conditional use permit necessary for the commercial development." (195 Cal.App.3d at p. 1269, italics in original, fn. omitted.)

While *Young* and the *Cloud* and *Investors Diversified* cases can be distinguished on their facts from the instant case,[3] the principle announced in these cases applies here, and that principle limits the fair market value of the take to its use in its undeveloped state. Interestingly, Lone Tree's primary argument against applying this principle does not support its position, but, to the contrary, supports the District's position. According to Lone Tree, the evidence shows "that, even considering the possibility of dedication, a knowledgeable, willing buyer would set a price for the land based on its potential for commercial development as a whole even though the Subject Property [the take] as well as other portions of the whole might never be put to an actual commercial use, either through planning restrictions requiring open space or even dedication."

In other words, Lone Tree is asserting that a willing, knowledgeable buyer would ignore the fact that a portion of Lone Tree's property would have to be dedicated.[4] Lone Tree's willing, knowledgeable buyer would be interested in the developable acres, and would pay the same price regardless of the dedication condition. In support of this approach, Lone Tree's appraiser testified that a buyer will take into consideration the "policies" of the City of Antioch, and that the buyer will be looking at net acreage. (See *City of Fresno* v. *Cloud, supra,* 26 Cal.App.3d at p. 122.)

As the District states, the price of the entire parcel necessarily reflects the buyer's knowledge that portions of the property would have to be dedicated or are otherwise unavailable for development. Lone Tree would receive a

[3]All three cases involved frontage strips of land condemned for road purposes, and in *Cloud* and *Investors Diversified,* the properties were zoned for agricultural use. As the District argues, however, these appear to be distinctions without a difference. Whether the dedication is for road widening or a flood control channel, it will never be developed, and how the dedication is required is not important so long as it can be required.

[4]Under section 1263.320, subdivision (a), the buyer and seller are presumed to be dealing with one another "with full knowledge of all the uses and purposes for which the property is reasonably adaptable and available."

windfall if it were to receive commercial value for a strip of land that would never be developed and that a buyer knew could not be developed.

In urging that the valuation of the take should be based on the value of the property as a whole, Lone Tree has cited three cases. (See *People* ex rel. *Dept. Pub. Wks.* v. *Princess Park Estates, Inc.* (1969) 270 Cal.App.2d 876 [76 Cal.Rptr. 120]; *People* ex rel. *Dept. Pub. Wks.* v. *Silveira* (1965) 236 Cal.App.2d 604 [46 Cal.Rptr. 260]; *People* ex rel. *Dept. of Public Works* v. *Neider* (1961) 195 Cal.App.2d 582 [16 Cal.Rptr. 58].) Dedication of the condemned parcel was not an issue in any of these cases, and the *Princess Park* and *Silveira* opinions both state that it is not proper to use an average value for the entire property to determine the value of the condemned parcel unless each square foot of the property is the same. (*Princess Park, supra,* 270 Cal.App.2d at p. 882; *Silveira, supra,* 236 Cal.App.2d at p. 617.) Where there is a reasonable probability that dedication of the condemned parcel would be required, the condemned parcel is not of the same value as the remainder of the property. (See *People* ex rel. *Dept. Pub. Wks.* v. *Investors Diversified Services, Inc., supra,* 262 Cal.App.2d at p. 374.)

By dividing the trial into two phases and determining the question of the probability of dedication, the trial court apparently accepted the District's argument that the reasoning stated in the *Young, Cloud,* and *Investors Diversified* cases applied here, but by deleting the last sentence of the jury instruction, the court did not fully implement the reasoning of these decisions.

The court decided the pertinent factual questions when it found there was a reasonable probability that dedication of a portion of Lone Tree's property would be required before development and that the take was the piece of property that would have to be dedicated. Though Lone Tree challenges the sufficiency of the evidence supporting the court's findings, it does not challenge the court's decision to make those findings itself.[5] Based on those findings, it remained for the jury to determine the value of the take as agricultural property.

II., III.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . .

[5]"[T]he property owner in an eminent domain action is entitled to a jury trial on the question of 'just compensation.' (Cal. Const., art. I., § 19.) All other issues of fact and law must be decided by the court. (*People* v. *Ricciardi* (1943) 23 Cal.2d 390, 402-403 [144 P.2d 799].)" (*Coachella Valley Water Dist.* v. *Western Allied Properties, Inc.* (1987) 190 Cal.App.3d 969, 974 [235 Cal.Rptr. 725].)

*See footnote, *ante,* page 930.

## IV. *Conclusion*

When there is a reasonable probability that a public agency would require dedication of the take as a condition of development, the take should be valued based on the use that can be made of the property in its undeveloped state. In this case that use was agricultural. Lone Tree should not receive a windfall for property that the court found would probably have to be dedicated to public use as a condition of development. The failure to give the jury instruction as requested by the District confused the jury and was prejudicial.

Given our conclusion that the reasoning in the *Young*, *Cloud*, and *Investors Diversified* cases applies here, the trial court's finding that the District acted in good faith in relying on those cases in making its settlement offer must be upheld, and Lone Tree's cross-appeal on the issue of litigation expenses has no merit.

The judgment is reversed and remanded for retrial of the second phase of the proceedings. On remand the court shall instruct the jury to value the take for agricultural purposes.[6] (See *City of Porterville* v. *Young, supra*, 195 Cal.App.3d at p. 1270.) The judgment is affirmed with respect to the denial of Lone Tree's motion for litigation expenses. Lone Tree is entitled to recover its costs on appeal pursuant to section 1268.720.

Strankman, P. J., and Stein, J., concurred.

The petition of appellant Lone Tree Investments for review by the Supreme Court was denied September 30, 1992.

---

[6]The valuation of the easements is inextricably bound with the valuation of the take. Retrial must include valuation of the easements.