Argued February 11, reargued June 6, reversed and remanded
September 13, petition for rehearing denied October 11, 1977

CHANDLER et ux, *Respondents,*
*v.*
BUNICK et al, *Appellants.*
(No. 34-813, SC 24447)
569 P2d 1037

Richard H. Muller, Portland, argued the cause for appellants. With him on the briefs was Bouneff, Muller & Marshall, Portland.

Derryck H. Dittman, Tigard, argued the cause for respondents. With him on the brief was Anderson, Dittman & Anderson, Tigard.

HOLMAN, J.

**HOLMAN, J.**

Plaintiffs brought an action against defendant builders for alleged breach of express terms of a contract to build a custom home on a lot owned by plaintiffs. Plaintiffs also alleged a second count for breach of implied warranties. Defendants' motion to take from the jury plaintiffs' implied warranties count was denied. Both counts were submitted to the jury, and judgment for plaintiffs was entered pursuant to a jury verdict. Defendants appeal.

Plaintiffs entered into an earnest money agreement to buy a lot from persons other than defendants on October 5, 1972. The following day plaintiffs entered into a preliminary agreement with defendants to have a custom home built on the lot. Both before and after entering into these agreements, plaintiffs were told by a representative of defendants that the custom home "would work" on the lot. The land purchase was subsequently closed and the contract to build agreed upon. Although the contract referred to plaintiffs as "buyers" and to defendants as "sellers," it was, in fact, a contract by defendants to build a particular home for plaintiffs, and it is so recognized by plaintiffs.

Construction began in November 1972 and was near completion in March 1973, when defendants first engaged a subcontractor to install a septic system. The subcontractor determined that it might not be possible to fit an adequate septic system on the remainder of the lot. The system which he was able to install was not approved by the county, but it was nevertheless allowed to be covered and used to see if it would function. After plaintiffs moved into the completed home, the septic system failed, and effluent backed up into the house. Plaintiffs then learned for the first time that the septic system was not approved. Plaintiffs claimed other, less serious defects in the house as well.

Defendants contend the trial court erred in denying

their motion against plaintiffs' implied warranties count. The implied warranties were alleged as follows:

> "Defendants, as builder vendors of said new custom home impliedly represented and warranted to plaintiff that:
>
> "(a) The premises would be constructed in a proper and reasonably workmanlike manner;
>
> "(b) That the construction would be in accordance with all applicable statutes, restrictions, codes, and regulations pertaining to such construction;
>
> "(c) That the custom home when completed, would be fit for habitation; and
>
> "(d) That the location, size and topography of the lot upon which the custom home was to be constructed was suitable to accommodate said custom home and an approved subsurface sewage disposal system built to applicable regulations and codes."

■ ■ One wonders why it is necessary to turn an ordinary breach of contract case into one of warranty, a form of strict liability. On an implied warranty, one may be held liable for damages even when he has exercised all reasonable or even possible care. Ordinarily, the imposition of strict liability is the response to some demonstrated public need where the traditional legal theories have been found inadequate to the task. The recent expansion of the strict liability of the seller of goods came about in response to such a situation.[1] A similar development is taking place in the field of sales of new homes by vendor-builders.[2] We are now grappling with the complexities of these developments. *Compare Yepsen v. Burgess,* 269 Or

---

[1] *See, e.g.,* Restatement (Second) Torts § 402A, comment b; Prosser, The Assault Upon the Citadel (Strict Liability to the Consumer), 69 Yale L J 1099 (especially 1122-124) (1960); and *Greenman v. Yuba Power Products, Inc.,* 59 Cal 2d 57, 27 Cal Rptr 697, 377 P2d 897, 901 (1962), which are among the significant authorities stressing the inadequacy of the traditional sales warranty as a means of compensating consumers who are injured, or whose property is injured, by dangerously defective goods.

[2] The history of both the law and the literature in this area is surveyed in Comment, *Extension of Implied Warranties to Developer-Vendors of Completed New Homes,* 11 Urban L Ann 257 (1976). Cases are collected in 25 ALR3d 383, §§ 4, 6 (1969).

635, 525 P2d 1019 (1974), *with Cook v. Salishan Properties, Inc.,* 297 Or 333, 569 P2d 1033 (1977).

■ In the present case the argument swirls around the implications of *Yepsen v. Burgess, supra.* We decided in *Yepsen* that the buyer of a house from a vendor-builder was in need of the added protection of an implied warranty that the house would be built in a workmanlike manner and be fit for habitation. In disposing of the instant case it is necessary to determine whether similar protection is necessary and appropriate here.

■ Implied warranties arise out of sales in which the nature of the goods, the circumstances of the sale, and the convenience of trade necessitate a guarantee of quality and suitability. In the present case nothing was sold. Defendants agreed to build a house to a particular plan for a price. We find it unnecessary to imply a warranty for habitability under these circumstances for several reasons. First, the law of contract gives some protection because it implies certain provisions, such as reasonably workmanlike performance. *Newlee v. Heyting,* 167 Or 288, 292, 117 P2d 829 (1941); *Amer. Recip. Insurers v. Bessonette,* 241 Or 500, 506, 405 P2d 529 (1965). In addition, the person for whom the house is built can, and often does, obtain specific protection in the contract of construction. Every transaction of this kind has its own special problems. It is reasonable to expect the parties to such transactions to arrange by contract whatever division of responsibility they consider appropriate to the particular circumstances. Also, persons who contract to have houses built for them do not, as do purchasers of new houses, first arrive upon the scene when there is a completed house. On the contrary, they can, and often do, watch the construction from inception before defects are covered over beyond discovery. We acknowledge that many persons would have insufficient knowledge to protect themselves under such circum-

stances; nevertheless, they do have the opportunity to inspect, or to arrange for expert inspection, at all stages of the construction.

In *Yepsen v. Burgess, supra,* the principal problem was, as here, a defective sewage system which resulted from the combination of house and land. In *Yepsen* the house and land were sold as a unit, whereas in the present case defendants agreed to build a specific house upon plaintiffs' land for a price. Generally, persons are not placed in the position of impliedly guaranteeing the condition of someone else's land or its suitability for a particular purpose. However, there is nothing to prevent one from undertaking such an obligation by express agreement. There is evidence that defendants inspected the land and indicated it was suitable upon which to build the home which plaintiffs had selected. Defendants' responsibility, if such exists, arises out of a specific representation and is not one implied at law merely from the act of constructing a house on someone else's land.

We are unaware of any crises of unmet needs in the field of breach of contract for the construction of houses, and no authority in support of such a need has been cited to us, except our decision in *Yepsen* and similar cases. As we have pointed out in the past, the problem with judicially adopted strict liability is one of limitation. *Phillips v. Kimwood Machine Co.,* 269 Or 485, 491, 525 P2d 1033 (1974). Each time we apply strict liability doctrines in a new area, further extension is suggested by the expressed rationale or by analogy. We are satisfied that our decision in *Yepsen* was correct, but we are not willing to extend its principles to other settings so long as we remain unconvinced that there is a demonstrated need to do so. In the present circumstances, breach of contract provides an adequate remedy.

The trial court erred in submitting the implied warranties count to the jury, since there was no factual basis for its submission. It is not possible to

[ 358 ]

determine whether the jury's verdict was based upon breach of contract, breach of implied warranties, or upon both. Therefore, the judgment is reversed and the case is remanded for trial upon the breach of contract count.