Argued and submitted June 26, 2002, reversed and remanded in part; otherwise affirmed May 15, 2003

ASSOCIATION OF UNIT OWNERS OF
BRIDGEVIEW CONDOMINIUMS,
for itself and as statutorily authorized
representative of the unit owners of
Bridgeview Condominiums,
*Appellant,*

*v.*

Charles G. DUNNING,
personally and as personal representative of
the Estate of Karen F. Thornton, deceased;
Crystal Construction Co., Inc.; Ron Hodges;
Patricia Hodges; Zarosinski-Tatone Engineers;
Z-Tec Engineers; Dean P. Zarosinski,
and Ronald B. Sellards,
*Respondents,*

*and*

CENTURY 21 PENINSULA REALTY, INC.,
*Defendant.*

9708-06380; A110283

69 P3d 788

M. Scott Bellows and A. Richard Vial argued the cause for appellant. With them on the opening brief were Law Offices of Scott Bellows and Vial Fotheringham LLP. On the reply briefs were Scott Bellows and Law Offices of Scott Bellows.

Thomas J. Murphy argued the cause for respondent Charles G. Dunning. Peter R. Chamberlain argued the cause for respondents Z-Tec Engineers, Dean P. Zarosinski, and Ronald B. Sellards. With them on the joint brief were Michael J. Scott, Scott Hookland LLP, Andrew D. Glascock, and Bodyfelt Mount Stroup & Chamberlain.

Thomas M. Christ argued the cause for respondents Ron Hodges, Patricia Hodges, and Crystal Construction Co., Inc. With him on the brief was Cosgrave Vergeer & Kester LLP.

J. Nicholas Baldwin-Sayre waived appearance for respondent Zarosinski-Tatone Engineers.

Before Landau, Presiding Judge, and Brewer and Schuman, Judges.

LANDAU, P. J.

**LANDAU, P. J.**

Plaintiff, the Association of Unit Owners of Bridgeview Condominiums (association), initiated this action against the developers and builders of the condominium, and also against the general contractor, the engineers, and former members of its own board of directors. The association asserted claims both in its own capacity and in a representative capacity on behalf of its members. The complaint asserts numerous claims for damages arising out of alleged defects in the design and construction of the condominium, including claims based on negligence, fraud, strict liability, intentional and negligent misrepresentation, breach of fiduciary duty, breach of the association's bylaws, violations of the Oregon Condominium Act, and breach of express and implied warranties. The trial court granted motions to strike or to dismiss nearly all of the claims; the balance, the trial court abated pending arbitration. The trial court then awarded attorney fees to some defendants. The association appeals, arguing that the trial court erred in granting the motions to strike and to dismiss, in abating the remaining claims, and in awarding some defendants attorney fees. We conclude that the trial court erred in dismissing the claims for breach of express and implied warranty and in awarding attorney fees to certain defendants. We otherwise affirm.

## I. FACTUAL BACKGROUND

At least for the purposes of this appeal, the relevant facts are not in dispute. Defendants Charles Dunning and his wife, Karen Thornton, built the Bridgeview Condominiums in North Portland and formed the original board of directors of the association. The 18-unit condominium consists of two buildings constructed on-site, a pool house, pool, and grounds. Defendant Crystal Construction Co., Inc., was the general contractor for the construction of the condominium. Defendants Ron and Patricia Hodges are the owners of Crystal Construction. Defendants Zarosinski-Tatone Engineers, Z-Tec Engineers, Dean Zarosinski, and Ronald Sellards were the engineers on the project.

The association is a nonprofit corporation organized under ORS 100.405, which provides generally for the organization of associations of condominium unit owners "to serve

as a means through which the unit owners may take action with regard to the administration, management and operation of the condominium." ORS 100.405(1)(a). The association filed a complaint against the foregoing defendants arising out of what the association and its 18 members believed to be significant defects in the design and construction of the condominium. Included in the original complaint was a claim for strict product liability. Defendants Dunning and Thornton moved to strike the claim, arguing that Oregon law does not recognize a claim for strict product liability based on defective design and construction of a condominium. The trial court agreed and allowed the motion.

The association repleaded. After several rounds of motions, the association filed a fourth amended complaint, which asserted ten claims. The association asserted those claims in its own capacity. In the alternative, the association alleged each of the claims as the representative of each of its 18 members, the owners of each of the 18 condominium units.

The first eight claims are asserted against defendants Dunning and Thornton only. The first is for breach of express warranty. According to the association, under ORS 100.185, Dunning and Thornton were obligated to warrant against defects in the design and construction of the condominium and, in fact, did warrant as against such defects to 14 original purchasers of the condominium units. The association further alleges that the common areas of the condominium contain numerous defects in design and construction, including, among others, defects in the buildings' main walls, floor joists, exterior decks and walkways, stairways, drainage, common doors and windows, siding, plumbing, electrical wiring, irrigation, the swimming pool, and the retaining wall.

The second claim is for negligence. According to the association, Dunning and Thornton failed to exercise reasonable care in the planning, design, manufacture, development, construction, marketing, and sale of the condominium in some four dozen specified ways.

The third claim is for breach of implied warranty. The association alleges that the condominium and its units carried with them at the time of sale implied warranties of

habitability and merchantability, which were breached by virtue of the enumerated defects in design and construction.

The fourth claim is for fraud. The association alleges that, in the course of marketing the condominium and memberships in the association, Dunning and Thornton made numerous false representations as to the design and construction of the condominium and its units.

The fifth claim is for negligent misrepresentation. The association alleges that, as fiduciaries of the association and as developers of the condominium, Dunning and Thornton owed a duty to plaintiff and its members not to mislead them and to disclose known material facts as to the existence of construction defects. According to the association, Dunning and Thornton violated that duty by failing to disclose numerous construction defects or by negligently misrepresenting the design and construction quality of the condominium.

The sixth claim is for breach of contract. The association alleges that Dunning and Thornton, as members of the board of directors, were obligated to comply with the association's bylaws as a contract and that Dunning and Thornton breached that contract by, among other things, failing to disclose and misrepresenting the nature of numerous construction defects.

The seventh claim for relief is for breach of fiduciary duty. According to the association, Dunning and Thornton, as members of the board of directors, had a fiduciary duty to the association members, which Dunning and Thornton breached in failing to disclose or misrepresenting various defects in the condominium's design and construction.

The eighth claim, the final claim against Dunning and Thornton, is for violation of the Oregon Condominium Act. The association alleges that Dunning and Thornton violated various provisions of the statute by issuing disclosure statements, warranties, and other documents that did not comply with the requirements of the law.

The ninth claim, against Crystal Construction and Ron and Patricia Hodges, is for negligence. The association

alleges that, as registered contractors, they had a duty to supervise and perform the construction work in a reasonable fashion, which they neglected to do in various specified ways.

Finally, the tenth claim for relief, against Z-Tec, Zarosinski-Tatone, Zarosinski, and Sellards, is for negligence. The association alleges that the engineering work that those defendants performed failed to comply with applicable laws, building codes, and ordinances and failed to comply with the standard of care that applies to reasonable and competent civil engineers.

Defendants Dunning and Thornton responded with no fewer than 27 motions against the fourth amended complaint. The remaining defendants likewise filed a number of motions against the complaint. The motions that are pertinent to this appeal, and the trial court's rulings, were as follows.

Dunning and Thornton began with a motion to strike all eight claims asserted against them on behalf of the association itself. They argued that, in each case, the association failed to state a claim and that the association lacks "capacity" to assert any of the claims because the association itself has no interest that has been directly affected by any of the misconduct alleged in the complaint. As to the argument that the association failed to state a claim, Dunning and Thornton noted that the complaint alleges that the association's direct interest is in the nature of indemnity, that is, the association is obligated to repay individual members for certain damages that they incur. The problem is, Dunning and Thornton argued, that the association failed to allege all the required elements of an indemnity claim. The trial court granted the motion in its entirety on both grounds and did not permit the association to replead.

Dunning and Thornton followed that with a motion to strike the claims for fraud and negligent misrepresentation brought by the association as the representative of the individual members on the ground that the claims are not cognizable under the Oregon Condominium Act. The trial court granted the motion "in all of its aspects" and did not permit the association to replead.

Dunning and Thornton next moved to strike the allegation that the association is bringing its claims both on its own behalf and on behalf of its members. Dunning and Thornton argued that the association should be compelled to identify which of the claims are being asserted by the association on its own behalf and which are being asserted on behalf of its members. The trial court allowed the motion to strike without an opportunity to replead.

Dunning and Thornton moved to strike the claim for negligence and to make more definite and certain the association's allegations of negligence. They argued that the duties that the association alleged had been breached are apparently based on a supposed contract between them and the unit owners, which is not a permissible basis for asserting a negligence claim. They requested an order from the court requiring the association to replead with specificity as to the nature and source of the duties on which the claim is based. The trial court allowed the motion.

Dunning and Thornton next moved to strike the claim for breach of express warranty to the extent that it is being asserted on behalf of the association's members. They argued that any express warranties were made to the individual members, and only those members are entitled to enforce them. The trial court granted the motion, explaining that each warranty is "a private contract with each individual unit owner and thus claims under it cannot be made" by the association. The court did not permit the association to replead.

Dunning and Thornton also moved to strike the claim for breach of implied warranty, arguing that, among other things, only the individual unit owners may assert such claims and, in any event, no implied warranties run to unit owners who are not original purchasers. They also argued that, because the complaint alleged that the express statutory warranty required under ORS 100.185 was delivered to 14 of the plaintiffs, under that statute they are precluded from asserting a claim for implied warranties. The trial court granted the motion, explaining that the association lacks authority to bring such a claim on behalf of individual unit owners, whether those owners are original purchasers or

transferees. The association was not given an opportunity to replead.

Dunning and Thornton moved to strike the claim for breach of contract based on the alleged violations of the association's declaration and bylaws. They argued that the declaration and bylaws are not contracts and may not be enforced as such. The trial court agreed and allowed the motion without an opportunity to replead.

Dunning and Thornton also moved to strike the association's claim for breach of fiduciary duty on the ground that, as a matter of law, they had no fiduciary obligations to the association or its members. The trial court agreed and allowed the motion without an opportunity to replead.

Dunning and Thornton moved to strike the association's claim for violations of the Oregon Condominium Act on the ground that no private right of action exists for enforcing the Act and that the complaint failed to specify which provisions had been violated. The trial court agreed with Dunning and Thornton in both respects and granted the motion to strike without an opportunity to replead.

Dunning and Thornton also moved to strike various allegations of consequential damages to individual units, arguing that such damages are not the sort that may be recovered by a condominium association, even on behalf of its members. The trial court agreed, allowed the motion, and did not permit the association to replead.

Finally, Dunning and Thornton moved to abate and to compel arbitration of all claims, except the claim for breach of contract, that the association asserted on behalf of five particular unit owners whose earnest money agreements contained mandatory arbitration provisions. The trial court granted the motion.

Defendants Crystal Construction and the Hodges also moved to dismiss the single negligence claim asserted against them. Their principal argument was that the complaint against them was unintelligible and violated the requirement of ORCP 18 that a claim for relief be plain and concise. They also joined the arguments of Dunning and Thornton in arguing that the association lacks authority to

bring such a negligence claim either on its own behalf or on behalf of the individual condominium unit owners. The trial court granted the motion.

Defendants Zarosinski-Tatone Engineers, Z-Tec Engineers, Zarosinski, and Sellards also moved to dismiss the single negligence claim asserted against them. Those defendants adopted the arguments that had been advanced by the others. The trial court granted the motion, entered a judgment disposing of all of the association's claims against them, and awarded attorney fees.

Defendant Zarosinski-Tatone Engineers settled with the association and was dismissed from the case. Meanwhile, defendants Crystal Construction and the Hodges moved for an award of attorney fees. The trial court granted the motion and entered a supplemental judgment awarding attorney fees to those defendants.[1]

## II. DISPOSITION OF THE MERITS

The association appeals, advancing five assignments of error: (1) the trial court erred "in dismissing Plaintiff's Fourth Amended Complaint on grounds that Plaintiff was not the real party in interest and/or lacked the capacity to sue"; (2) the court erred in refusing to permit the association to replead; (3) the court erred in "failing to recognize a cause of action for strict liability in tort where the product is fungible, mass-produced condominium units"; (4) the court erred in granting the motion to compel arbitration of some of the claims; and (5) the court erred in awarding attorney fees.

A. *First Assignment: Dismissal of Claims on "Real Party in Interest" Grounds*

1. *Scope of the Assignment*

We begin with the association's contention that the trial court erred in dismissing the complaint because the association "was not the real party in interest and/or lacked capacity to sue." At the outset, we must confess that we are not entirely confident of what the association is attempting to

---

[1] Also, following the entry of the judgment, defendant Thornton died. On appeal, Dunning represents the interests of Thornton's estate.

encompass within its assignment of error. The association complains generally that the trial court erroneously dismissed its complaint; in actuality, the trial court disposed of ten different claims in response to some two dozen different motions. ORAP 5.45(3) requires that "[e]ach assignment of error shall identify precisely the legal, procedural, factual, or other ruling that is being challenged." The association's assignment falls far short of that requirement, leaving us to attempt to divine—by comparing the arguments on appeal with the arguments advanced in support of and opposition to each of the motions in the trial court—what the association most likely is getting at. If we have misconstrued the scope of what the association intended to encompass within its first assignment, it is not for want of effort.

■ As we understand it, the crux of the association's argument on appeal is that the trial court erred in dismissing each of its claims because the association is entitled to bring each of the claims either on its own behalf or on behalf of its members. The problem is that, at least in some cases, defendants moved against the association's claims on other grounds in addition to those characterized as "lack of capacity" or "real party in interest." Thus, even if the association were correct in asserting that the trial court erred in dismissing those claims on lack of capacity or real party in interest grounds, it is possible that the trial court's decision remains correct on the alternative grounds that defendants asserted. *See generally Outdoor Media Dimensions Inc. v. State of Oregon*, 331 Or 634, 659-60, 20 P3d 180 (2001) (explaining "right for the wrong reason" principle). And, given that the association's assignment and briefing do not address any of those alternative grounds, we must conclude that the dismissal of any such claims must be affirmed without further discussion. We turn, then, to the task of identifying which of the association's claims are encompassed within the association's first assignment of error.

As we have noted, Dunning's and Thorton's first motion against the fourth amended complaint challenged each of the eight claims against them, to the extent that they are being advanced on behalf of the association, on the twin grounds of failure to state a claim and "lack of capacity." The trial court granted the motion, expressly stating that it

agreed with defendants on both grounds. On appeal, the association challenges the trial court's decision with respect to the first motion only to the extent that it was predicated on the association's lack of capacity; it does not address the alternative ground of the failure of the complaint to state a claim. We therefore reject the association's arguments as to the trial court's ruling on that motion without further discussion.

The same must be said of the trial court's rulings on Dunning's and Thornton's motions with respect to the claims for negligence, breach of contract, breach of fiduciary duty, fraud, negligent misrepresentation, and violations of the Oregon Condominium Act. The court dismissed each claim in response to defendants' arguments that, apart from considerations of capacity to sue, the association had failed to state a claim. Similarly, the trial court granted motions to strike allegations of consequential damages to individual unit owners on the ground that such damages are not recoverable under the Act. The association does not argue that the trial court erred in allowing those motions on those alternative grounds, and we therefore reject without further discussion any contention that the rulings are erroneous.

The same also must be said of the negligence claims against Crystal Construction and the Hodges and against Z-Tec Engineers, Zarosinski, and Sellards. In both cases, the claims were dismissed on grounds other than the association's lack of capacity or real party in interest. And the association advances no other argument in support of a contention that the trial court erred in dismissing those claims. We therefore reject without further discussion any contention that the dismissal of those claims was erroneous.

In contrast, it appears to us that the trial court disposed of the claims for breach of express and implied warranties solely on the ground that the association lacks capacity to bring such claims or is not the real party in interest. The trial court's disposition of those two claims, therefore, is fairly encompassed within the association's first assignment of error. We proceed, then, to determine whether the trial court erred in concluding that, as a matter of law, the association

may not assert claims for breach of express and implied warranties on behalf of the individual condominium unit owners.

### 2. *Disposition of the Assignment*

■ In reviewing the trial court's dismissal of those claims, we accept the allegations of the association's complaint, together with all reasonable inferences, as true. *McAlpine v. Multnomah County*, 131 Or App 136, 138, 883 P2d 869 (1994), *rev den*, 320 Or 507 (1995). Before proceeding to the task of reviewing the legal sufficiency of the allegations of the complaint, however, we pause to make clear the proper usage of the terms "capacity" and "real party in interest," which the parties employ in making their arguments.

■■ As we understand it, the term "capacity" generally refers to an entity's legal ability to bring or appear in an action. *See, e.g.*, *Black's Law Dictionary* 188 (5th ed 1981) (defining "capacity" as "[t]he ability of a particular individual or entity to use, or to be brought into, the courts of a forum"). It does not refer to an entity's entitlement to a particular remedy in the action. Thus, for example, in *Towerhill Condo. Assoc. v. American Condo. Homes*, 66 Or App 342, 675 P2d 1051 (1984), this court rejected the argument that a condominium association was not entitled to seek damages for defects in the common elements of a condominium because it lacked "capacity to sue." We noted that any properly organized nonprofit corporation has the power to sue and be sued. *Id.* at 344 n 1. In this case, the complaint alleges that the association has been properly organized as a nonprofit corporation under the laws of this state. As such, the association has "capacity" to sue and be sued. ORS 65.077(1).

■■ The term "real party in interest," in contrast, traditionally refers to a person with a legally cognizable interest, that is, the party who will be "benefited or injured by the judgment in the case." *Pulkrabek v. Bankers' Mortgage Corp.*, 115 Or 379, 385, 238 P2d 347 (1925); *see also Metropolitan Property & Casualty v. Harper*, 168 Or App 358, 376, 7 P3d 541 (2000). It also refers to a person who is statutorily authorized to bring an action. In that regard, ORCP 26 A provides:

"Every action shall be prosecuted in the name of the real party in interest. An executor, administrator, guardian, conservator, bailee, trustee of an express trust, a party with whom or in whose name a contract has been made for the benefit of another, *or a party authorized by statute may sue in that party's own name without joining the party for whose benefit the action is brought*[.]"

(Emphasis added.)

In this case, the issue is whether the association is authorized to assert claims of breach of express or implied warranties on behalf of its members. Thus, the issue is one, not of capacity to sue, but of whether the association is the real party in interest.

### a. Breach of Express Warranty Claim

■ We begin with the claim for breach of express warranty. The association contends that it is statutorily authorized to assert the claim on behalf of its members under the Oregon Condominium Act. Specifically, it argues that it is authorized to bring such a claim under ORS 100.405(4)(d) (1997), which provides that a condominium association may

"[i]nstitute, defend or intervene in litigation or administrative proceedings in its own name on behalf of itself or on behalf of two or more unit owners on matters affecting the condominium[.]"[2]

The express warranties that Dunning and Thornton delivered to the unit owners concerning the proper design and construction of the condominium, the association argues, are "matters affecting the condominium." Therefore, it concludes, it is entitled to assert a claim based on a breach of those warranties on behalf of two or more of its members. In support of its argument, the association relies on this court's decision in *Towerhill*, which the association reads as upholding the authority of a condominium association under the

---

[2] The association also argues that it is even more clearly entitled to assert its claim under certain amendments to the statute, enacted after the initiation of this action in 1999. *See* Or Laws 1999, ch 677. Dunning and Thornton argue that the statute was not intended to be applied retroactively to cases such as this one. In light of our conclusion that the association is authorized to assert the claim under the earlier version of the statute, we need not address whether the amendments apply retroactively to this case.

statutory predecessor to ORS 100.405(4)(d) (1997) to assert claims for breach of warranty and negligence on behalf of unit owners.

■ Dunning and Thornton argue that the statute does not apply, because warranties are not "matters affecting the condominium." According to Dunning and Thornton, a warranty—whether express or implied—is, in essence, a private contract between the developer and the individual unit owner. A breach of such a warranty does not "affect" the condominium; it affects only the condominium unit owner.[3] As for *Towerhill*, Dunning and Thornton argue that the case is distinguishable because the condominium association in that case asserted claims involving only the *common elements* of the condominium.

■ Whether ORS 100.405(4)(d) (1997) authorizes the association to assert a claim for breach of express warranty on behalf of its members is a question of statutory construction. In construing the statute, we resort to the familiar principles of *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-12, 859 P2d 1143 (1993), examining first the text in context and then, if necessary, the legislative history and other aids to construction.

A "condominium" is defined by statute as follows:

"(A) The land, if any, whether leasehold or in fee simple and whether contiguous or noncontiguous;

"(B) Any buildings, improvements and structures on the property; and

"(C) Any easements, rights, appurtenances belonging to the property * * *[.]"

ORS 100.005(9)(a) (1997).

Ownership of a condominium entails ownership of the "unit" and of "common elements." A "unit" includes

---

[3] In support of the argument, Dunning and Thornton invoke the canon of statutory construction that statutes in derogation of the common law must be strictly construed. We wish that parties would stop invoking that canon of construction. It is an anachronism reflecting a nineteenth century preference for case law over legislation, which the Supreme Court has stated "is long overdue to be put to rest." *Beaver v. Pelett*, 299 Or 664, 668-69, 705 P2d 1149 (1985).

"[a]ll spaces, nonbearing interior partitions, windows, window frames, exterior doors, and door frames and all other fixtures and improvements within the boundaries of the unit[.]"

ORS 100.510(2)(a) (1997). The "[g]eneral common elements" include

"(a) The land * * *;

"(b) The foundations, columns, girders, beams, supports, main walls, roofs, halls, corridors, lobbies, stairs, fire escapes, entrances and exits of a building;

"(c) The basements, yards, gardens, parking areas and outside storage spaces;

"(d) Installations of central services such as power, light, gas, hot and cold water, heating, refrigeration, air conditioning, waste disposal and incinerating;

"(e) The elevators, tanks, pumps, motors, fans, compressors, ducts and in general all apparatus and installations existing for common use;

"(f) The premises for the lodging of janitors or caretakers of the property; and

"(g) All other elements of a building necessary or convenient to its existence, maintenance and safety, or normally in common use."

ORS 100.005(16) (1997).

The unit owners of a condominium are required to form an association, which is given certain powers and duties:

"(1) An association of unit owners shall be organized to serve as a means through which the unit owners may take action with regard to the administration, management and operation of the condominium. The association shall be organized as a corporation for profit or nonprofit corporation or as an unincorporated association. If the association is incorporated, the name of the association shall include the complete name of the condominium.

"(2) Membership in the association of unit owners shall be limited to unit owners.

"* * * * *

"(4) Subject to the provisions of the condominium's declaration and bylaws, and whether or not the association is unincorporated, the association may:

"* * * * *

"(d) Institute, defend or intervene in litigation or administrative proceedings in its own name on behalf of itself or on behalf of two or more unit owners on matters affecting the condominium[.]"

ORS 100.405 (1997).

At issue in this case is the meaning of the statutory reference to the authority of the association to institute litigation on behalf of two or more unit owners "on matters affecting the condominium."

The statute is broadly worded. It does not, for example, limit the authority of an association to initiate litigation on matters affecting only the common elements of the condominium. The authority of the association to represent unit owners in litigation extends to all "matters" that "affect[ ]" the "condominium."

A "matter" ordinarily refers to a "subject" or a "topic under active and usu[ally] serious or practical consideration." *Webster's Third New Int'l Dictionary* 1394 (unabridged ed 1993). "Affect," as a verb, usually means "to act upon * * * to produce an effect upon * * * to produce a material influence upon or alteration in." *Id.* at 35. And "condominium," as we have noted, is defined to include the land, buildings, improvements, structures, easements, rights, and appurtenances belonging to the property. ORS 100.005(9)(a) (1997).

The question, then, is whether a breach of express warranty as to the design and construction of a condominium is a subject or topic that produces an effect upon or has an influence upon the land, buildings, structures, and rights that are included within the statutory definition of "condominium." It seems clear to us that the answer is that the breach of the warranty does affect the condominium in the sense that it results in multiple defects in the design and construction of the land, building, and structures that make up the condominium.

The fact that the breach arises out of a contractual relationship that is "personal" to the individual unit owner is beside the point. The statute plainly authorizes a condominium association to assert claims both on its own behalf and on behalf of the unit owners. The sole statutory condition is that the claim asserted on behalf of individual unit owners concern "matters affecting the condominium."

Dunning's and Thornton's arguments to the contrary also cannot be reconciled with this court's decision in *Towerhill*. In *Towerhill*, the plaintiff condominium association brought an action pursuant to the predecessor to ORS 100.405 (1997), which authorized condominium associations to institute litigation on behalf of two or more unit owners "on matters affecting the condominium." *Former* ORS 94.146(4)(d) (1987), *renumbered as* ORS 100.405 (1989). On behalf of its members, the association complained of defects in the design and construction of the common elements of a condominium, alleging claims of breach of express warranty and negligence. The trial court dismissed the claims on the ground that the condominium association lacked "legal capacity" to sue and was not the real party in interest. The association appealed, arguing that the statute conferred authority to bring the claims on behalf of the individual unit members. The defendants argued that the statute did not confer such authority and that, if it did, it violated state and federal constitutional guarantees against impairment of contract.

This court reversed, holding that—as we already have noted—the association had "capacity to sue" by virtue of its lawful organization as a nonprofit corporation and further holding that the association was the real party in interest by virtue of *former* ORS 94.146(4)(d). *Towerhill*, 66 Or App at 346-47. As for the constitutional challenge, the court rejected it, holding that any impairment of contract was not constitutionally significant. *Id.* at 348.

While it is true that the court observed that the specific warranty at issue in that case—and thus the resulting claims—involved the common elements of the condominium, nothing in the opinion remotely suggests that the court read the *statute* to confer authority on a condominium association

only when such common elements are at issue. Even if the decision had so limited the scope of the statute, however, it would not aid Dunning and Thornton in this case because, although the specific warranties as alleged do not target common elements alone, the complaint alleges that the defects resulting from the breach of the warranties involve damage to such common elements as the condominium buildings' main walls, floor joists, exterior decks and walkways, stairways, drainage, common doors and windows, siding, insulation, swimming pool, and retaining wall. *See* ORS 100.005(16) (1997) (defining "[g]eneral common elements" of condominium).

We therefore conclude that the association's breach of express warranty claim is a "matter affecting the condominium" and that, in consequence, the association is authorized by ORS 100.405(4)(d) (1997) to bring the claim on behalf of the unit owners. The trial court erred in reaching a contrary conclusion and in dismissing the breach of express warranty claim.

### b. Breach of Implied Warranty Claim

■ Having arrived at that conclusion with respect to the breach of express warranty claims, the disposition of the remaining claim for breach of implied warranty is a foregone conclusion. The claim is based on allegations that Dunning and Thornton, as developers, builders, and sellers of the condominium, impliedly warranted that the units and the common elements were of merchantable quality; that they knew that the units would be used as single-family residences and that purchasers would rely on Dunning's and Thornton's judgment in design and construction of the condominium; and that, as a result of Dunning's and Thornton's breach of those implied warranties, the units and common elements are not habitable or merchantable and are unsafe and unfit for their intended use. Those allegations assert "matters affecting the condominium" within the meaning of ORS 100.405(4)(d) (1997). As a result, the association is statutorily authorized to assert the claim on behalf of individual unit members.

■ Dunning and Thornton argue that, even if, in theory, the association may assert implied warranty claims on behalf

of individual unit owners, it may not do so with respect to the 14 unit owners in this case who received the express warranty required under ORS 100.185. The association concedes that, under ORS 100.185, the express warranty required by that statute is "in lieu of any implied warranties[.]" It argues, however, that, because there is no allegation that the express warranties delivered to the 14 original purchasers actually conformed to the requirements of ORS 100.185, the delivery of those express warranties to those purchasers does not preclude them from also asserting claims for breach of implied warranties.

We agree with the association. While the complaint does mention the statute and does allege that express warranties as to defects in the design and construction of the condominium were delivered to 14 original purchasers, the complaint—read in the light most favorable to the association—does not actually contain allegations that make clear that the warranties conformed to the requirements of the statute. We therefore reject Dunning's and Thornton's argument that the association may not assert a claim for breach of implied warranties on behalf of those unit owners. The trial court erred in dismissing the breach of implied warranty claim.

B. *Second Assignment: Denial of Motion to Amend*

In its second assignment of error, the association complains that the trial court should have allowed its motion to amend its complaint to add individual condominium unit owners as named parties. Dunning and Thornton argue that the trial court did not abuse its discretion, given that the case already had gone through four amended complaints over the course of two years and that the issue had been raised and argued continually during that time.

We review a trial court's decision not to permit a party to replead for abuse of discretion. *Cross v. Eastlund*, 103 Or App 138, 142, 796 P2d 1214, *rev den*, 310 Or 612 (1990). It appears to us that the assignment is academic. Six of the claims were dismissed for reasons other than—or in addition to—real party in interest concerns. Repleading to add individual condominium unit owners would change nothing as to those claims. And we are reversing the trial court's dismissal of the other claims, which were dismissed on real

party in interest grounds. In any event, given the timing of the association's request to the trial court and the multiple chances to replead that already had been allowed, we cannot say that the trial court abused its discretion.

C. *Third Assignment: Dismissal of Strict Product Liability Claim*

■ In its third assignment of error, the association challenges the trial court's dismissal of its claim for strict product liability for failure to state a claim. The association acknowledges that the courts of this state have yet to recognize such a claim as applied to condominiums. It asserts, however, that, in light of a "rising flood" of condominium construction defect claims, we must do so now and recognize condominiums as "products" within the meaning of the state's product liability law. Dunning and Thornton argue that product liability law was intended to apply to the sale of chattels, not residential real estate.

■ ORS 30.920 extends liability to "[o]ne who sells * * * any *product* in defective condition unreasonably dangerous to others." (Emphasis added.) Whether something is a "product" within the meaning of the statute is a question of law. *See Sease v. Taylor's Pets*, 74 Or App 110, 115, 700 P2d 1054, *rev den*, 299 Or 584 (1985). The statute does not define the term. In its ordinary usage, it is capable of broad meaning. *See, e.g., Webster's* at 1810 (defining "product" as, among other things, "something produced by physical labor or intellectual effort"). We do not examine the meaning of the word in a vacuum, however. *See, e.g., State v. Holloway*, 138 Or App 260, 265, 908 P2d 324 (1995) ("Dictionaries provide a useful starting point for determining what words mean, at least in the abstract. In that sense, they suggest what the legislature *could have* meant by the terms it enacted." (Emphasis in original.)).

ORS 30.920(3) provides, in part:

"It is the intent of the Legislative Assembly that the rule stated in subsections (1) and (2) of this section shall be construed in accordance with the *Restatement (Second) of Torts* sec. 402A, Comments a to m (1965)."

In this case, three of the comments to the *Restatement* are instructive. First, comment a notes that the subject of section 402A is the liability of "suppliers of chattels." The term "chattel," in legal parlance, ordinarily refers to "[a]n article of personal property, as opposed to real property. A thing personal and moveable." *Black's Law Dictionary* 215 (5th ed 1981).

Second, comment c explains that,

"[o]n whatever theory, the justification for strict liability has been said to be that the seller, by marketing the product for use and consumption, has undertaken and assumed a special responsibility toward any member of the consuming public who may be injured by it; that the public has a right to and does expect, in the case of products which it needs and for which it is forced to rely upon the seller, that reputable sellers will stand behind their goods; that public policy demands that the burden of accidental injuries caused by products intended for consumption be placed upon those who market them, and be treated as a cost of production against which liability insurance can be obtained; and that the consumer of such products is entitled to the maximum of protection at the hands of someone, and the proper persons to afford it are those who market the products."

The clear emphasis of the comment is the "use and consumption" of "goods."

Third, comment d provides a representative list of the "products" to which section 402A is intended to apply:

"The rule stated in this section is not limited to the sale of food for human consumption, or to other products for intimate bodily use, although it obviously will include them. It extends to any product sold in the condition, or substantially the same condition, in which it is expected to reach the ultimate user or consumer. Thus the rule applies to an automobile, a tire, an airplane, a grinding wheel, a water heater, a gas stove, a power tool, a riveting machine, a chair, and an insecticide. It also applies to products which, if they are defective, may be expected to and do cause only 'physical harm' in the form of damage to the user's land or chattels, as in the case of animal food or herbicide."

In this comment perhaps most clearly, the reporter of the *Restatement* establishes that the focus of section 402A is goods.

The Oregon Supreme Court has expressed the same view of the scope of section 402A. In *Chandler v. Bunick*, 279 Or 353, 569 P2d 1037 (1977), the court declined to recognize a claim for breach of implied warranties arising out of defects in the construction of a custom home. The court commented that,

> "[o]rdinarily, the imposition of strict liability is the response to some demonstrated public need where the traditional legal theories have been found inadequate to the task. The recent expansion of the strict liability of the seller of goods came about in response to such a situation."

*Id.* at 356. There followed a citation to section 402A of the *Restatement of Torts. Id.*

In this case, the association complains about the defective design and construction of an 18-unit condominium that consists of two buildings that were constructed on-site. Such structures are not "chattels," nor are they "goods" within any reasonable definition of the term. We conclude that they are not "products" within the meaning of ORS 30.920.

The association insists that we should expand the definition of "products" to include condominium buildings for essentially two reasons, neither of which we find persuasive. First, the association argues that there is a demonstrated public need for extending strict liability to the seller of condominiums. According to the association, recent years have witnessed an alarming increase in construction defect claims, which the Construction Contractors Board is simply unable to control. The scope of the product liability statute, however, is not determined as a matter of our judgment as to what is the best policy in response to perceived public needs. The legislature already has accomplished that in enacting ORS 30.920. The task of the courts is merely to determine the scope of the legislature's policy judgments as expressed in the statute. In any event, as *Chandler* illustrates, historically the Oregon courts have been reluctant to expand the scope of strict liability when consumer interests are adequately protected by contractual and related remedies. In this case, as we have recognized, claims for breach of express and implied warranties already are available to the association.

Second, the association argues that we should adopt the view expressed in a 1981 California court of appeal decision, *Del Mar Beach Club Owner's Association v. Imperial Contracting Company, Inc.*, 123 Cal App 3d 898, 176 Cal Rptr 886 (Cal App 4th Dist 1981), in which the court held that a condominium association could maintain an action for product liability arising from defects in the condominium buildings. The relevance of a decision of another state issued after the enactment of ORS 30.920 is not clear to us, however.

In any event, the courts of other jurisdictions have split on the question whether section 402A extends to entire buildings. *Compare Blagg v. Fred Hunt Co. Ins.*, 272 Ark 185, 189, 612 SW2d 321, 324 (1981) (holding that buildings may be "products" for purposes of strict product liability), *with Heller v. Cadral Corporation*, 84 Ill App 3d 677, 679, 406 NE 2d 88, 90 (1980) (holding that a building is not a "product" within the meaning of section 402A of the *Restatement (Second) of Torts*). Those courts that have expanded the concept of "product" to encompass buildings have done so as a matter of policy. *See, e.g., Blagg*, 272 Ark at 189, 612 SW2d at 324 ("The law should be based on current concepts of what is right and just and the judiciary should be alert to the never-ending need for keeping its common law principles abreast of the times."). In contrast, as we have explained, we are constrained to determine the issue as a matter of statutory construction, focusing instead on what the legislature most likely intended when it enacted the product liability law. ORS 174.020 (courts must construe statutes to effectuate legislative intent, if possible); *PGE*, 317 Or at 610 (same). We conclude that the trial court did not err in allowing Dunning's and Thornton's motion to dismiss the association's strict product liability claim.

D. *Fourth Assignment: Entry of Order Compelling Arbitration*

■ In its fourth assignment, the association contends that the trial court erred in entering an order compelling arbitration of the claims brought on behalf of five of the individual unit members on the ground that their earnest money agreements contain mandatory arbitration clauses. The association argues that the clauses are void because, among

other things, they deprive the association of its right to a jury trial guaranteed by the state and federal constitutions. Dunning and Thornton contend that the arbitration clauses in the earnest money agreements are completely enforceable.

 We do not address the validity of the arbitration clauses at this stage in the proceeding because orders abating a proceeding are not reviewable. As this court explained in *Hilsenbeck v. Quadrant Corp.*, 53 Or App 341, 346-47, 632 P2d 19 (1981):

> "An abatement order * * * differs from orders on demurrers, orders allowing motions to strike and similar interlocutory rulings which become reviewable after a final judgment is entered: An abatement order resolves no issue *in the judicial proceeding*; rather, it directs the parties to submit their controversy to another forum. If the arbitrator assumes jurisdiction and decides the controversy, the arbitration statute contains its own provisions relating to judicial review, including review of the determination that the dispute is arbitrable. Conversely, if the *arbitrator* concludes that the controversy is not arbitrable, the abatement order dissolves and the action becomes triable, and, presumably, the issue of arbitrability can again be raised in trial and on appeal."

(Emphasis in original.) We therefore reject the assignment without further discussion.

E. *Fifth Assignment: Award of Attorney Fees*

In its final assignment, the association contends that the trial court erred in awarding attorney fees to defendants Crystal Construction, the Hodges, Z-Tec Engineers, Sellards, and Zarosinski. According to the association, there is no statutory or contractual basis for an award of attorney fees in favor of those defendants because the claims against them were based on negligence alone. Defendants Crystal Construction and the Hodges respond that, as to them at least, the assignment is not properly before us because the association failed to appeal the supplemental judgment that awarded them attorney fees. Defendants Z-Tec Engineers, Sellards, and Zarosinski argue that they are entitled to attorney fees under ORS 20.096 because the association pleaded entitlement to attorney fees.

■ We agree with defendants Crystal Construction and the Hodges that the award of attorney fees as to them is not properly before us, the association having failed to appeal the supplemental judgment that contains the award. *Schmidt and Sweitz*, 172 Or App 182, 186-87, 18 P3d 431 (2001).

■ As to defendants Z-Tec Engineers, Sellards, and Zarosinski, however, we conclude that the association is correct. The only claim asserted against them was for negligence. ORS 20.096 applies only when a claim is "based on a contract." There is no other basis for an award of attorney fees to those defendants.

Judgment dismissing claims for breach of express and implied warranties reversed and remanded; portion of judgment awarding attorney fees to defendants Z-Tec Engineers, Sellards, and Zarosinski reversed; otherwise affirmed.