CITY OF BRIGHTON, a municipal corporation of the State of Colorado, Plaintiff–Appellant and Cross–Appellee,

v.

Debora M. PALIZZI, Gloria A. Bennett, and Palizzi & Son, Inc., a Colorado corporation, Defendant–Appellees and Cross–Appellants.

No. 07CA1343.

Colorado Court of Appeals, Div. VI.

Oct. 30, 2008.

Certiorari Granted Aug. 17, 2009.

Murray Dahl Kuechenmeister & Renaud LLP, Patrick Wilson, Denver, Colorado; Mehaffy Brubaker & Ernst, LLC, Margaret R. Brubaker, Brighton City Attorney, for Plaintiff–Appellant and Cross–Appellee.

Fowler, Schimberg & Flanagan, P.C., Timothy J. Flanagan, Theresa A. Vogel, Denver, Colorado, for Defendant–Appellees and Cross–Appellants.

Opinion by Judge J. JONES.

In this eminent domain action, petitioner, the City of Brighton, appeals the judgment awarding respondents, Debora M. Palizzi, Gloria A. Bennett, and Palizzi & Son, Inc. (collectively, the landowners), $204,387.15 for the value of property taken by the City to widen a road. The landowners cross-appeal the district court's refusal of their request to withdraw the court's award of attorney fees from the court registry without posting a 200% bond. We reverse the judgment and remand for a new trial.

## I. Background

Beginning in 2005, the City sought to widen and improve Bromley Lane into a four-lane, divided street with turn lanes and a raised median. To complete these improvements, the City needed to acquire approximately seventy feet of additional land from certain properties on the south side of Bromley Lane. Two of those properties are owned by the landowners. The two parcels are located in unincorporated Adams County, adjacent to the Brighton city limits, and contiguous to each other. One comprises 19.77 acres and the other comprises thirty-four acres.

The City sought fee title to the northern seventy feet of the landowners' two parcels, or approximately .8 acres, and a temporary slope and construction easement of approximately .1 acres. Pursuant to an agreement between the parties, the City took possession of this acreage to complete the street widening project.

The City instituted this action to determine how much it owed the landowners. A jury rendered a verdict awarding the landowners compensation of $204,387.15 for the seventy-foot strip. The City appeals, contending that the district court erred in denying its pretrial motions to exclude certain testimony concerning the value of the strip.

The following facts, taken from the parties' pleadings, motions, and other papers, and the testimony and other evidence introduced at trial, provide additional context necessary for evaluating the merits of the City's arguments.

The two parcels at issue were originally part of the Palizzi farm, which consisted of approximately 120 acres. The boundaries of the farm were Bromley Lane to the north, Sable Boulevard to the west, and Fulton Ditch to the south and east.

Development of the Palizzi farm began in August 1999, when the estate of Margaret Palizzi and Palizzi & Son, Inc. sold 15.66 acres at the corner of Bromley Lane and Sable Boulevard to a commercial developer. The developer bought the property for $2,673,200 ($3.92 per square foot), conditioned upon the developer's obtaining (1) an-

nexation of the property by the City, (2) a rezoning of the property from agricultural to commercial, and (3) all other necessary approvals for the contemplated development. The conditions were satisfied. In return for approving the rezoning and associated development, the City required the developer to dedicate—that is, to convey fee title to—a strip of land to the City for the widening of Bromley Lane.

In July 2002, the City annexed a second portion of the Palizzi farm located directly east of the parcels at issue in this case. The City required the owner to dedicate, at no cost to the City, seventy feet along Bromley Lane as a condition of the annexation. The owner subsequently sold 39.69 acres to a second commercial developer for $2,456,630 ($1.42 per square foot), in July 2005. At the time of the sale, this property was zoned agricultural. In November 2006, the second developer sold 10.881 acres that had since been rezoned for commercial use to an investment firm for $8.44 per square foot. The portion of the original 39.69 acres that the second developer did not sell is zoned for multi-family use.

The two parcels at issue in this case are between the two developed parcels discussed above. They are zoned Adams County Agriculture A–1 and are currently used for agricultural purposes. The parcels are flat and uniform. It is undisputed that because of an inter-governmental agreement between the City and Adams County, the parcels cannot be developed unless they are annexed by the City. It is also undisputed that as a condition of annexation, the landowners would be required to dedicate a seventy-foot-wide strip of land bordering Bromley Lane to the City. The parcels have not been annexed by the City, nor have they been subdivided or platted. The landowners have not sought or obtained any of the approvals which the City would require before any material change in use could be made to the parcels.

Both the landowners' appraiser and the City's appraiser used the sales-comparison approach to valuing the condemned seventy-foot-wide strip. The landowners' appraiser assumed that the highest and best use of the parcels was as a mixed commercial and resi-dential development (which would require re-zoning). He looked at five "comparable sales" of parcels in the City:

- The 1999 sale of the 15.66–acre parcel of the Palizzi farm.
- The December 2003 sale of a 7.85–acre parcel for $2.33 per square foot. The buyer anticipated using the parcel to build an office building.
- The July 2004 sales of two parcels, a 5.03–acre parcel and an 8.59–acre parcel, which were to be developed jointly for a movie theater and retail center. The 5.03–acre parcel sold for $6.28 per square foot. The 8.59–acre parcel sold for $3.74 per square foot.
- The January 2005 sale of a 50–acre parcel for $3.66 per square foot. The buyer intended to build a hospital on the property.

The City had annexed and rezoned these properties, all had been subdivided and platted, and all were in various stages of development before the sales. Based on these allegedly comparable sales, the landowners' appraiser valued the seventy-foot-wide strip at $157,936 ($4.25 per square foot).

The City's appraiser also determined that the highest and best use of the parcels was as a mixed commercial and residential development. However, unlike the landowners' appraiser, he took into account that the two parcels at issue had not been annexed by the City, had not been rezoned for any higher use, and were completely undeveloped. The City's appraiser relied on the following comparable sales:

- The June 2002 sale of a 39–acre parcel for $.75 per square foot.
- The January 2003 sale of a 40–acre parcel for $.62 per square foot.
- The January 2003 sale of a 36.12–acre parcel for $.74 per square foot.
- The March 2005 sale of a 19.34–acre parcel for $1.17 per square foot.
- The July 2005 sale of the 39.69–acre parcel from the Palizzi farm for $1.42 per square foot.

The City had annexed all of these properties at the time of the sales, but none of them

had been platted. The City's appraiser valued the 19.77–acre parcel at $1.25 per square foot and the 34–acre parcel at $1 per square foot, and accordingly determined that the fair market value of the seventy-foot-wide strip was $35,250.

Prior to trial, the City filed three motions in limine to exclude much, if not all, of the landowners' appraiser's evidence of value. The City argued that the landowners' appraiser's valuation (1) ignored the fact the strip would have to be dedicated as a condition of annexation and rezoning; (2) was based on a speculative and illegal subdivision of the two parcels into a smaller lot, which was valued, and a larger lot, which was not; and (3) was based on analysis of sales of other properties that were not truly comparable, in that those properties had been annexed, rezoned, platted, and, in some cases, developed, at the times of the sales. Following a hearing, the district court denied the City's motions. The landowners' appraiser testified at trial as noted above.

## II. Discussion

■ The City contends initially that the district court erred in permitting the landowners to present valuation evidence based on the potential future use of the parcels for commercial purposes. It argues that because it is undisputed that any such use would require annexation and rezoning, and the City would condition any such annexation and rezoning on dedication of the seventy-foot-wide strip to the City, an appraisal based on such use improperly assumes a use to which the strip could not be put. We agree.

We review a district court's ruling on a motion in limine for an abuse of discretion. *Ehrlich Feedlot, Inc. v. Oldenburg*, 140 P.3d 265, 272 (Colo.App.2006). We will find an abuse of discretion only upon a showing that the court's ruling was manifestly arbitrary, unreasonable, or unfair. *See Wark v. McClellan*, 68 P.3d 574, 578 (Colo.App.2003).

■ Article II, section 15 of the Colorado Constitution provides, in relevant part: "Private property shall not be taken or damaged, for public or private use, without just compensation." "Just compensation reflects the value of the landowner's lost interest, not the taker's gain. . . . '[T] he owner must be put in as good position pecuniarily as if the property had not been taken.'" *Fowler Irrevocable Trust 1992–1 v. City of Boulder*, 17 P.3d 797, 802 (Colo.2001) (citation omitted; quoting in part *United States v. Gen. Motors Corp.*, 323 U.S. 373, 379, 65 S.Ct. 357, 89 L.Ed. 311 (1945)). Thus, when a government entity condemns private property for a public purpose, "the property owner is entitled to recover 'an amount equal to the loss which he has suffered by reason of the taking, and nothing more.'" *E–470 Pub. Highway Auth. v. 455 Co.*, 3 P.3d 18, 23 (Colo.2000) (quoting in part *City of Englewood v. Weist*, 184 Colo. 325, 331, 520 P.2d 120, 123 (1974)). "The award must be just to both the property owner and the public. . . . The landowner is not entitled to a windfall at the taxpayer's [sic] expense based on speculative considerations." *Fowler Irrevocable Trust 1992–1*, 17 P.3d at 804 (citations omitted).

■ Just compensation typically is measured by the "present reasonable market value" of the property taken, "in light of the property's 'highest and best use.'" *City of Englewood v. Denver Waste Transfer, L.L.C.*, 55 P.3d 191, 195 (Colo.App.2002) (quoting in part *City of Aurora v. Webb*, 41 Colo.App. 11, 14, 585 P.2d 288, 291 (1978)); *see also Fowler Irrevocable Trust 1992–1*, 17 P.3d at 803–04; *Bd. of County Comm'rs v. Vail Assocs., Ltd.*, 171 Colo. 381, 388, 468 P.2d 842, 845 (1970). The rule governing the admissibility of evidence for property valuation is expansive rather than restrictive. *City of Englewood*, 55 P.3d at 195. Therefore, the evaluator may "consider any competent evidence, apart from certain factors arising from the very fact of condemnation, which would be considered by a prospective seller or buyer as tending to affect the present market value of the land." *Goldstein v. Denver Urban Renewal Auth.*, 192 Colo. 422, 425, 560 P.2d 80, 83 (1977). Such evidence may include valuation evidence based on a future use of property permitted by rezoning where "the likelihood of rezoning rises to the level of a probability. . . ." *Stark v. Poudre Sch. Dist. R 1*, 192 Colo. 396, 398, 560 P.2d

77, 79 (1977); *see Fowler Irrevocable Trust 1992–1,* 17 P.3d at 803.

The issue whether evidence of value dependent on a probable annexation and rezoning may be excluded because dedication of the property being taken would be required as a condition of such annexation and rezoning does not appear to have been addressed directly by any Colorado appellate court. In *E–470 Public Highway Authority v. Jagow,* 30 P.3d 798, 802 (Colo.App.2001), *aff'd,* 49 P.3d 1151 (Colo.2002), the condemning authority argued that an annexation agreement required dedication of the property that it sought, and that the condemned property should be valued accordingly. However, the *Jagow* division concluded that the annexation agreement did not require dedication of the property at issue, and therefore the division did not determine what effect, if any, such a dedication requirement would have on the valuation determination. *Id.* at 801–02.

Nonetheless, Colorado's eminent domain jurisprudence generally supports the position that the consequences and costs of any probable rezoning of the condemned property are relevant in assessing the property's value. *See, e.g., Fowler Irrevocable Trust 1992–1,* 17 P.3d at 803–04; *Webb,* 41 Colo.App. at 14–15, 585 P.2d at 291–92. This is because a reasonable buyer and a reasonable seller would take such consequences and costs into account in negotiating the sale price of the property. *Webb,* 41 Colo.App. at 15, 585 P.2d at 292.

Courts in a few other jurisdictions have addressed this issue. The rule in California is that, although evidence of value based on the highest and best use following a probable rezoning or development approval is ordinarily admissible, when undeveloped condemned land would have to be dedicated as a condition of development, it must be valued based on uses to which the property could be put in the absence of rezoning or development approval. *See, e.g., Contra Costa County Flood Control & Water Conservation Dist. v. Lone Tree Invs.,* 7 Cal.App.4th 930, 9 Cal.Rptr.2d 326, 330–31 (1992); *City of Porterville v. Young,* 195 Cal.App.3d 1260, 241 Cal.Rptr. 349, 355 (1987); *City of Fresno v. Cloud,* 26 Cal.App.3d 113, 102 Cal.Rptr. 874,

881 (1972); *see also State ex rel. Missouri Highway & Transp. Comm'n v. Sturmfels Farm Ltd. P'ship,* 795 S.W.2d 581, 585–86 (Mo.Ct.App.1990) (evidence of probable dedication requirement relevant to valuation). *But see City of North Las Vegas v. Robinson,* 122 Nev. 527, 134 P.3d 705, 709 (2006) (holding that the jury should not have been instructed to determine condemned land's value based solely on undeveloped uses even though dedication of the land would have been required as condition of development). This prevents the landowner from receiving a windfall for land that the landowner, or a potential purchaser, would have to dedicate to obtain upward zoning or development approval. *See Lone Tree Invs.,* 9 Cal.Rptr.2d at 330; *Cloud,* 102 Cal.Rptr. at 881.

In *Cloud,* a city sought to condemn forty-foot strips of land on two parcels to widen two streets. Both strips were part of larger parcels that were zoned for agricultural use. The landowners' appraiser assumed there was a reasonable probability the parcels would be rezoned to permit commercial or residential uses in the near future and valued the strips consistently with the average per square foot values of the entire parcels as so developed. The city attempted to introduce evidence that it typically required street dedication before granting any such rezoning. 102 Cal.Rptr. at 876–79. The trial court sustained the landowners' objection to that evidence. *Id.* at 879.

The California Court of Appeals reversed. It concluded that the evidence the city sought to admit was highly relevant. It further held:

[I]f upon retrial of the valuation issue, the court finds that the strips ... are a part of the very frontage that the landowners would have had to dedicate to the city in order to secure the zoning changes needed to develop the remaining parcels to their highest and best uses, the court must not value the property taken on the basis of those highest and best uses; it must determine instead the value of the frontage strips taken on the basis of the highest and best uses permitted by the existing zoning, because this land could never be used for any other purpose. If the land taken is so

valued, and if the landowners do not develop the remaining parcels beyond their presently permitted ... zoning uses, the owners will have been paid exactly what the frontage strips are worth. If the remaining parcels are developed to the higher uses allowed by the contemplated zoning changes [the owners] will have been paid for land that they would have had to dedicate gratuitously to the city in order to gain the higher zoning advantages.

*Id.* at 881.

In *Young,* a city sought to condemn a twelve-foot-wide strip of land to widen a street. 241 Cal.Rptr. at 351. The strip was part of an undeveloped five-acre tract zoned for commercial use. *Id.* The city planner testified that the city would require dedication of the twelve-foot-wide strip before the city would issue any building permit. *Id.*

The appellate court reversed the trial court's valuation, which was premised on a finding that the highest and best use of the taken land was as commercial property. The court remanded the case with instructions to calculate the fair market value of the property based on agricultural use, reasoning that if the strip of land was valued as agricultural as of the time of condemnation, the owner "will have been paid exactly what the [property taken] was worth." *Id.* at 354–55. The court observed if the property were valued as if it could be commercially developed, the owner would be paid an enhanced price for a strip that he would have been required to dedicate in the event of any commercial development. *Id.*

In *Lone Tree Investments,* the public agency sought to condemn a strip of undeveloped land, which was part of a larger undeveloped parcel, for a flood control project. The agency generally acquired land for that purpose by requiring property owners to dedicate the necessary portion as a condition to development. 9 Cal.Rptr.2d at 327–28. At trial, both parties' appraisers assumed that the highest and best use of the property was as commercial property. *Id.* at 328. The trial court rejected the agency's proposed jury instruction that the highest and best use of the property was agricultural. The California Court of Appeals held that the

trial court erred by rejecting the agency's proposed instruction, applying the principle that where there is a "reasonable probability that a public agency would require dedication of the take as a condition of development, the [property taken] should be valued based on the use that can be made of the property in its undeveloped state." *Id.* at 330–31.

In *Robinson,* the Nevada Supreme Court held that the trial court erred in instructing the jury that it should value a strip of land sought by a city to widen a road based on uses that would not trigger a dedication requirement applicable to that strip. The court reasoned that the jury was required to determine the value of the entire parcel in assessing the value of the strip, and that allowing the jury to ignore the highest and best use of the entire parcel was inconsistent with that requirement and effectively severed the strip from the remainder of the parcel. 134 P.3d at 707–09. In so holding, the court expressly rejected the California Court of Appeals' holding in *Lone Tree Investments. Id.* at 709.

We conclude that the California rule reflects economic reality and is consistent with the general principles, long accepted in Colorado, that the landowner is entitled to be compensated as if the taking had not occurred, but is not entitled to receive a windfall. Accordingly, we reject the Nevada Supreme Court's rationale in *Robinson.*

Here, if the property had not been condemned, the landowners would have had only two options for using the seventy-foot-wide strip and the parcels of which it is a part. First, they could have continued to use the property for agricultural purposes consistent with its current zoning. Second, they, or someone to whom they sold the property, could have sought annexation and rezoning by the City, in which case the City would have required dedication of the strip as a condition of any annexation and upward zoning. A prospective buyer desiring to purchase the parcels for the latter purpose would not attach the same value to the strip as it would to the remainder of the parcels. A willing, knowledgeable buyer would not ignore the fact that it would have to dedicate the strip as a condition of annexation and

476

rezoning. Instead, it would determine the value of the property it would end up with and could actually develop, and would be willing to pay that price for the entireties of the parcels. In other words, the strip would be of little or no value to the buyer: it would pay the same amount for the entire parcels with or without the strip. *See Lone Tree Invs.*, 9 Cal.Rptr.2d at 330. Under these circumstances, a valuation that merely determines a value for the entire parcels and assigns an average value to every square foot based thereon ignores the economic reality that the strip does not have the same value to a willing buyer as the developable remainders of the parcels.

■ We reject the landowners' argument that the California rule, which we adopt, is inconsistent with the rule in Colorado that condemned property is to be valued in accordance with its highest and best use. As noted, where rezoning is probable, it is ordinarily appropriate to value condemned property in accordance with the highest and best use as rezoned. However, the consequences and costs of such rezoning also must be taken into account. Here, it is undisputed that one such consequence or cost is dedication of the condemned strip to the City. Further, as noted, the overarching purpose of awarding compensation in an eminent domain case is to make the landowner whole, and nothing more. *455 Co.*, 3 P.3d at 23. There is simply no real world scenario in which the landowners, or a willing buyer, could develop the strip upon annexation and rezoning, or sell the strip (or the larger parcels of which it is a part) for a price which assumes that the strip will be developed.

■ We also reject the landowners' argument that evidence of the dedication requirement was merely one piece of evidence the jury could consider, but was free to reject. In the cases on which the landowners rely for this proposition, dedication was not a certainty. Where dedication is merely a possibility, or even a mere probability, the likelihood of dedication is one factor for the fact finder to consider. *See State v. Altimus*, 137 Or.App. 606, 905 P.2d 258, 262 (1995); *Sturmfels Farm Ltd. P'ship*, 795 S.W.2d at 584. In this case, in contrast, it is uncontroverted

that the strip cannot be developed unless the City annexes and rezones the landowners' parcels and that the City would require dedication of the strip before it would annex and rezone those parcels.

We therefore conclude that the district court abused its discretion by admitting evidence that valued the entire parcels as developed mixed-use, and valued the strip in accordance with the average per square foot value of the entire parcels as so developed. Based on the record, we cannot conclude that the jury did not rely on that evidence. Therefore, the judgment cannot stand. On remand, the parties may submit evidence that values the parcels based on their highest and best use only as allowed at the time the action was commenced.

Because of our resolution of this issue, we need not address the other issues raised by the City, and the landowners' cross-appeal is rendered moot.

The judgment is reversed and the case is remanded for further proceedings.

Judge DAILEY and Judge BERNARD concur.